Mary D. HAAS, Individually, and on behalf of all other persons similarly situated, Plaintiffs,

v.

PITTSBURGH NATIONAL BANK et al., Defendants.

Civ. A. No. 72–968.

United States District Court, W. D. Pennsylvania.

Sept. 25, 1974.

Michael P. Malakoff, Berger & Kapetan, James H. Joseph, Eugene B. Strassburger, III, Strassburger & McKenna, Pittsburgh, Pa., for plaintiffs.

Alexander C. Sherrard, William M. Hoffman, Campbell, Thomas & Burke, J. Tomlinson Fort, Edward W. Marsh, Thomas R. Wright, Reed, Smith, Shaw & McClay, Donald C. Bush, Philip A. Faix, Jr., B. Herbert Boatner, Jr., Anderson, Moreland & Bush, Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

This class action which challenges the defendant national banks' computation of the interest service charge on goods and services purchased using credit cards issued by the banks is once again before the Court, this time on cross-motions for summary judgment. (See Haas et al. v. PNB et al., 60 F.R.D. 604 (W.D.Pa.1973), the previous Opinion, wherein the facts of the case are set out in some detail.) Before the merits of the case may be considered, however, the propriety of passing upon a motion for summary judgment prior to sending out class notice must first be discussed. Since at various times in this litigation the parties have taken diametrically opposite stands on this recurrent and important question, a definitive decision on this point seems indicated.

In Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the Supreme court held, *inter alia*, that individual notice of the pendency of a class action must be sent to all class members who can be identified through the exercise of reasonable effort and that plaintiffs must bear the cost of such notice. The Supreme Court also

held that what the *Eisen* district court had termed a "preliminary mini-hearing" on the merits of the plaintiffs' action is not permitted under Rule 23. The majority Opinion's exact language in this regard is as follows:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained. This procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated a class action may be maintained as such "as soon as practicable after the commencement of [the] action. . . ." Id. at 178, 94 S.Ct. at 2152.

 It is not disputed that the language quoted above is the precise holding of the *Eisen* court on the matter of preliminary mini-hearings in Rule 23 class actions. The question here is whether, in so holding, *Eisen* ruled *sub silentio* that *any* consideration of the merits of a case was impermissible prior to a class determination and/or the sending out of notice to the class. I rule here, as I have ruled previously,[1] that a district court may consider the merits of a plaintiff's case in an action denominated as a class action by ruling upon a motion for summary judgment (or a motion to dismiss)[2] prior to ruling upon a motion for class determination or requiring that notice be sent to the class, once a class has been determined. Nothing in either the *Eisen* decision nor Rule 23 itself precludes such a result.

In the previous Opinion in the case *sub judice*, it was determined that a plaintiff class existed under subdivision (b)(3) of Rule 23; that is, it was determined that questions of law or fact common to members of the class predominated over questions affecting only individual members and that a class action was superior to other available methods for adjudication of the controversy.[3] Thus, as per the express language of subdivision (c)(2) of Rule 23 ("In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."), one of the options now available to the court would be to order that individual notice be sent to identifiable class members at cost to the representative plaintiff. Because in this case the class has been certified but notice has not been sent, we are in a slightly different procedural context than existed in those cases wherein a court was faced simultaneously with a motion or motions for summary judgment along with a motion for class determination. Needless to say, those cases where, faced with the latter situation, the court granted the motion for class determination without considering a motion for summary judgment or granted a class determination motion without a motion for summary

---

1. Allen v. Veterans Administration, et al., C.A. No. 73–419 (W.D.Pa. August 1, 1974).

2. This court makes no distinction in this context between examination of the merits of a class action upon a motion to dismiss as opposed to that required upon a motion for summary judgment since both permit the court to enter final, appealable judgments on the merits. See F.R.Civ.P. Rule 12(c).

3. Class certification specifically under subdivision (b)(3) is significant, because individual notice is required after such certification. No such individual notice is required in a class certified under subsections (b)(1) or (b)(2). It might also be noted that the plaintiff class in *Eisen* was certified under (b)(3).

## 804

judgment having been filed,[4] cannot be said to demonstrate the proposition that a court *must* determine class and direct that notice be sent before a motion to consider the merits of the case may be passed upon. The simple fact of the matter is that those cases did not consider the question with which we are faced in this case. By the same token, those cases wherein a court, having simultaneously before it motions for summary judgment and class determination, granted the former for the defendant and obviated the necessity for passing upon the latter, are persuasive only by implication, for they too fail to consider every aspect of the question before this court.[5]

In considering this question, the line of decision represented by Huff v. N. D. Cass Company of Alabama, 485 F.2d 710 (5th Cir. 1973), and Miller v. Mackey International Inc., 452 F.2d 424 (5th Cir. 1971) must be considered. In *Huff*, the Fifth Circuit Court of Appeals held that a representative plaintiff in an employment discrimination class action should not be disqualified by reason of an advance determination that his claim is predictably not a winning claim and that, therefore, he cannot adequately represent the class as mandated by Rule 23(a)(4). The *Huff* case cites and relies upon the following quotation from Miller v. Mackey Int'l, Inc.: "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Id., 452 F.2d at 427. Presumably because both the *Huff* and *Miller* cases reverse district court decisions in which class actions were dismissed without class certification or notice to the class, they are cited inaccurately for the proposition that under no circumstances may a district court consider the merits of a case without first having set the class action mechanism in motion.

My reading of the *Huff* and *Miller* cases is that they do no more than set out the seemingly self-evident proposition that a class action motion is not a motion for summary judgment and may not be treated by the court as such. This point would seem to have been made in a decision which cites both the *Miller* case and the *Eisen* case at the Circuit level in support of its holding, Dorfman v. First Boston Corp., 62 F.R. D. 466 (E.D.Pa.1973) where it is stated:

"To read an allegation of damages in the complaint as restricting class membership to individuals who can prove their actual damages at the time the class is formed would frustrate the limited purposes of Rule 23. It would mean that before deciding a Rule 23 motion in an action for damages, a court would invariably have to determine whether the putative class

4. For examples of these situations see the previous opinion in this case, supra, and Katz v. Carte Blanche, 52 F.R.D. 510 (W. D.Pa.1971), rev'd on other grounds, 496 F. 2d 747 (3d Cir. 1974).

5. See Acker v. Provident National Bank, 373 F.Supp. 56 (E.D.Pa.1974); Gerlach v. Allstate Insurance Co., 338 F.Supp. 642 (S.D. Fla.1972); Kenney v. Landis Financial Group, 349 F.Supp. 939 (N.D.Iowa 1972), and Allen v. Veterans Administration, supra. See also the following language in the Second Circuit opinion in *Eisen*: "The Federal Rules of Civil Procedure set forth a considerable variety of procedural devices designed for the disposition of cases on the merits. There may be traditional trials to a judge or to a judge and jury; *there may be*

*summary judgments*, dismissals with or without prejudice for failure to state a claim or so on. But neither in amended Rule 23 nor in any other rule do we find provision for any tentative, provisional or other makeshift determination of the issues of any case for the avowed purpose of deciding a collateral matter such as which party is to be required to pay for mailing, publishing or otherwise giving any notice required by law." 479 F.2d 1005, 1015 (2d cir. 1973) (emphasis added). Presumably, this distinction between consideration of the merits by means of a preliminary mini-hearing and consideration by means of summary judgment was completely accepted by the Supreme Court in its affirmance of the Second Circuit's position.

representative had himself suffered damages. In other words, an allegation of damages in the complaint would in effect transform a class action motion into a motion for summary judgment as to the representative plaintiff's damages."

Id. at 472.

The proposition for which the *Huff, Miller* and *Dorfman* cases stand—that a class action motion may not be treated as a motion for summary judgment—involves a separate and distinct issue from that under consideration here. The question here is whether or not a district court may pass upon a properly filed motion for summary judgment without first having activated the procedural safeguard of notice to all class members. I hold that in order to avoid a potentially needless expenditure of court time and plaintiff's money, it may. It need hardly be pointed out that if the decision on summary judgment is for plaintiff, that is either a judgment that questions of fact remain which necessitates a trial of the issues involved or a judgment for plaintiff on the merits, the opportunity always remains for the court to undertake class certification and/or notice to the class at that later stage without undue prejudice to either side.

The *Eisen* case itself presents no bar to such a holding because it does not address itself directly to the question here at hand. The precise question upon which the *Eisen* court ruled was whether a district court could conduct a preliminary mini-hearing on the merits of a class action in order to apportion the costs of notice. The preliminary mini-hearing, as explained in Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968) and the district court opinion in *Eisen*, 54 F.R.D. 565 (S.D.N.Y.1972), was designed to effect a formal inquiry into the question of which side was more likely to prevail on the merits of the case so that the costs of notice could be apportioned according to the likely eventual outcome of the suit. It is readily apparent that because, as the Supreme

Court pointed out, such a hearing would not be "accompanied by the traditional rules and procedures applicable to civil trials . . ." (Id., at 178, 94 S. Ct. at 2153), serious problems of due process and what might be called civil double jeopardy are presented for class action defendants.

■ Summary judgment presents none of the difficulties which caused the Supreme Court to strike down the preliminary mini-hearing concept since, under the standard of Rule 56, it can constitute a final, appealable decision of the case. Because no court may resort to summary judgment determination until it has determined that no genuine issue of material fact remains in the case and only questions of law are left for resolution, the preliminary mini-hearing's spectre of placing the defendant in double peril is not presented. Moreover, Rule 56 and the case law interpreting it have clearly delineated the procedural protections entailed in handling a motion for summary judgment.

The strongest argument in favor of the proposition that the Supreme Court in *Eisen* meant to rule that no consideration of the merits of a nominal class action could take place until both class certification and notice to the class had been accomplished springs from the following language in the case: "Rule [23] was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit." *Eisen* at 176, 94 S.Ct. at 2152. The reasoning is that only where a decision on the merits has been preceded by both class certification and notice to the class can it be *absolutely* certain that the defendant will no longer be subject to liability from any potential class member on the same issue. See in this regard the *en banc* of the Third Circuit Court of Appeals in Katz v. Carte Blanche, *supra.*

■ Upon consideration of the issue it seems to me that the converse of the argument above embodies the more persuasive reasoning; that is, given the minimal risk to which the defendant

may be exposed, the court should not be required to engage in vain and useless effort merely for the sake of form. This is especially true, where, as here, the defendants themselves have moved for summary judgment, thus expressly pinning their hopes on *stare decisis* and the fundamental principle that the appellate process serves to protect all litigants from an incorrectly granted judgment. The defendants, by moving for summary judgment prior to the sending out of class notice, thereby assume the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members, for only the slender reed of *stare decisis* stands between them and the prospective onrush of litigants. Certainly a judgment for the plaintiff would subject them to unfortunate consequences as to the liability phase of the case, but, assuming that the judgment is correctly granted, this would seemingly not change their initial willingness to be bound. On the other hand, a correctly granted judgment for the defendant would protect both the parties and the court from needless and costly further litigation.

What is being discussed here is not the ability of the court to *assume* at any stage of class action litigation that either side will prevail on the merits, but rather the timing of and the very ability of the court to decide the merits of the case as a matter of law where there are no issues of fact in controversy. It would be illogical and unreasonable in the extreme to bind the court to a position where its freedom to consider the issues before it is needlessly restricted by a technical, *pro forma* approach to decisionmaking.

When it is considered that notice to the class, at least where it goes to customers of a commercial defendant, may carry with it an almost inescapable connotation of wrongdoing (*see* Katz v. Carte Blanche, *supra*) it becomes readily apparent that to require that notice to the class always precede consideration of the merits would be to unfairly weight the mechanism of Rule 23 to the advantage of plaintiffs by increasing the settlement value of any suit filed as a class action, no matter how meritless the action may eventually be found to be. The avoidance of undue advantage to one side or the other because of technical or procedural happenstance has been, and must continue to be the cornerstone of an impartial federal judiciary. Thus, for all of the reasons stated above, I hold that a district court may pass upon a motion for summary judgment prior to passing upon a motion for class determination or requiring that notice be sent to an already certified class, and I will do so here.

## THE MERITS OF THE CASE

Count I of the plaintiffs' complaint presents a question of statutory applicability to the Court. The three defendant banks have charged and are charging interest on their Bank Americard and Master-Charge accounts at a rate of one and a quarter percent per month, or fifteen percent per year. This rate is in accordance with that set by Section 904 of the Pennsylvania Goods and Services Installment Sales Act of 1966, 69 P.S. § 1904 (hereinafter referred to as the Sales Act). Plaintiffs contend that the applicable statutory authority for institutions such as defendant banks who are engaged in the sort of credit transactions under examination here is not the Sales Act, but rather the Pennsylvania Banking Code of 1965, 7 P.S. § 309. The Banking Code sets the rate applicable to installment loans at one percent per month, or twelve percent per year.

Under an almost identical set of facts, the selfsame issue was raised before Judge John Hannum of the Eastern District of Pennsylvania in Acker v. Provident National Bank, 373 F.Supp. 56 (E.D.Pa.1974). Judge Hannum conceded in *Acker* that the Banking Code of 1965 is by its terms relevant to a bank credit card transaction, but held that the 15% rate of the Sales Act was applicable to the transactions at issue. He reasoned that, as a matter of legislative in-

tent, such a conclusion was inescapable since the 1966 Sales Act was passed after the 1965 Banking Code and since the defendant banks could qualify as "financing agencies" under the terms of the Sales Act. I fully adopt Judge Hannum's reasoning and conclusion as to Count I of this case. Defendants' motion for summary judgment will be granted as to Count I of plaintiffs' complaint.

■ In Count IV,[6] plaintiffs argue that if this Court finds, as it has found, that defendants are regulated by the Sales Act, then the Court should find that the defendants are violating that Act by compounding interest; that is, applying the maximum permissible service charge rate to the total balance rather than the outstanding balance of charge customers' delinquent accounts. In Acker v. Provident National Bank, supra, Judge Hannum, having found as I have here that defendants' interest rate was governed by the Sales Act rather than the Banking Code, was faced with precisely the same issue in a nearly identical factual context. Having undertaken a detailed analysis of Sections 904 and 905 of the Sales Act, and having noted the significant fact that whereas other acts[7] expressly prohibit the compounding of interest, no such prohibition appears in the Sales Act, Judge Hannum held that compounding service charges was legal in Pennsylvania under these circumstances. I fully adopt the reasoning and holding of Acker v. Provident National Bank as to Count IV of this case. Defendants' motion for summary judgment as to Count IV of plaintiffs' complaint will be granted.

Thus, the sole remaining issue in this case is whether the defendants were in violation of the Sales Act when they utilized the previous balance method of accounting to compute interest on customer revolving charge accounts. This issue, raised in Count II of plaintiffs' complaint, was neither present nor passed upon in Acker v. Provident National Bank.

The following illustration will serve to demonstrate the operation of the previous balance method and contrast it with computation of interest using variants of the average daily balance method which defendants now employ. In a situation where a bank operates on a calendar month billing cycle, on March 31, the last day of the billing cycle, the cardholder's previously clear account is charged with a $100.00 purchase. On April 6, the cardholder pays $75.00. On April 30, if the previous balance method is used, the cardholder will be charged $1.25 in interest, computed by multiplying the 1¼% service charge by the $100.00 previous balance. Actually, however, since the cardholder has owed $100.00 for only five days in April and $25.00 for the remaining 25 days, if a true or simple interest rate was utilized, the service charge would be only $.47 for the month of April.

On June 11, 1974, I entered an Order redefining the plaintiff class to include all holders of Bank-Americard and Master Charge credit cards issued by defendants PNB, Mellon and Equibank, who during the period of November 13, 1970 [January 21, 1972 as to Equibank] were charged a finance charge in connection with the purchase of goods and services.

According to uncontradicted affidavits submitted on behalf of the defendant banks, defendant PNB discontinued the use of the previous balance method for computing its finance charge in November of 1972. It has no intention of re-

---

6. In Counts III and V of their complaint, plaintiffs alleged that defendants had charged excessive interest in other ways. However, discovery revealed that defendants were not in violation of any law in conducting the activities challenged in those counts so that the plaintiffs consequently consented to defendants' motion for summary judgment as to those counts. Defendants' motion was granted by this Court on November 12, 1973.

7. E. g., 7 P.S. § 6152 and 7 P.S. § 6217.1.

suming its use of the previous balance method. Defendant Mellon discontinued the use of the previous balance method in February of 1972 and it too has no intention of resuming the practice. At no time since May of 1971 has defendant Equibank used the previous balance method and avers that, like the other banks, it has no intention of resuming the practice.

■ Since this lawsuit seeks both judgment in damages against the defendants in the aggregate amount of twice the amount of interest paid within the two years prior to the filing of this action, and injunctive relief prohibiting the practices complained of, it becomes readily apparent that as to Count II of their complaint plaintiffs have failed to state a cause of action against defendant Equibank. Equibank has not utilized the previous balance method within the period under examination in this case. Thus, Equibank's motion for summary judgment as to Count II will be granted.

It also becomes apparent that, as to defendants PNB and Mellon, although their disavowal of the previous balance method renders plaintiffs' request for injunctive relief moot, a cause of action for damages may have been stated against them under Count II, since both were engaged in the use of the previous balance method during the relevant period from November of 1970 until February and November of 1972 respectively. Thus, the legality of the previous balance method of computing interest under the Sales Act must be considered as to defendants PNB and Mellon.

The only Pennsylvania legislation applicable to the legality of the previous balance method is Section 904 of the Pa. Sales Act, 69 P.S. § 1904, which provides as follows:

Subject to the other provisions of this article the seller or holder of a retail installment account may charge, receive and collect the service charge authorized by this act. The service charge shall not exceed the following rates computed on the outstanding balances from month to month:

(a) On the outstanding balance, one and one-quarter percent (1¼%) per month.

There being no statutory authority or case law stating directly that the previous balance method may not be used in Pennsylvania (or for that matter, that it may be used), plaintiffs' argument proceeds of necessity by implication. Plaintiffs contend that by use of the previous balance method defendants charged interest on indebtedness that was no longer "outstanding" and therefore charged interest greater than the 1¼% per month permissible under the Sales Act. Their basic point is to suggest that the term "outstanding balance" necessarily means the amount owing and unpaid and that, therefore, the Sales Act does not permit a service charge to be computed on a balance without first subtracting from that balance payments as received. Plaintiffs cite in support of their position Partain v. First National Bank of Montgomery, 467 F.2d 167 (5th Cir. 1972) wherein the Court of Appeals for the Fifth Circuit adopted such a position.

In considering this question it is important to note that the previous balance method has been widely employed since the early 1950's when revolving charge accounts first came into widespread use. It was the method used by virtually all retailers offering revolving credit in Pennsylvania at the time of the enactment of the Sales Act. At the present time, it is still apparently commonly used in this state and elsewhere, particularly by small retail stores. That the three banks who are defendants in this case and many other large institutions involved in retail financing no longer employ the previous balance method can be laid to the advent of more sophisticated computer technology in the late 1960's and early 1970's which made possible an instantaneously responsive billing system for a large number of customers.

■ With this background in mind, this Court holds that the use of the pre-

vious balance method is permissible in Pennsylvania under the state Sales Act. Perhaps if this Court were the first governmental entity to consider the question of interest rates on charge accounts and/or if there were no Pennsylvania legislation on the subject whatsoever (as was the situation in *Partain,* supra, where the court ruled in the absence of any specific Alabama legislation regulating revolving charge accounts), then I might be inclined to strike down the use of the previous balance method, whether used by large or small creditors. The previous balance method strikes me as a devious means for taking unfair advantage of a customer relationship by working to squeeze every possible penny out of the finance charge. But under these circumstances, where the state legislature has considered the problem and where the defendants no longer employ this method in their finance charge calculations, this court will not strike down the previous balance method.

■ No inference of wrongdoing can be drawn from the fact that the defendants have ceased to engage in the practice, even if it is noted that they did so after plaintiffs filed suit in this case. The situation is analogous to that giving rise to the well-settled exclusionary doctrine of subsequent repairs in the law of negligence. (See Rule 51 of the Uniform Rules of Evidence and § 13:48 of Jones on Evidence.) The subsequent repair doctrine holds that for reasons of public policy, no inference of negligence may be drawn from the fact that, subsequent to an injurious occurrence, the defendant has repaired the alleged defect or adopted some new precaution. The public policy reasoning behind the doctrine is that any other position would effectively discourage the making of repairs. In this situation to draw a negative inference from the banks' discontinuance of the previous balance system would be to penalize them for responding, to their customers' benefit once they did respond, to technological advances in computer science. Once the banks were able

to economically institute the average daily balance method when advances in computer technology were made, they did so.

■ An even more significant factor in my reasoning is the fact that in passing the Pa. Sales Act, the legislature presumably considered this problem and felt it satisfactory to set a nominal rate of interest for revolving credit transactions without passing on questions of the technique used to arrive at a true rate of interest. In arguing their position as to Count II, plaintiffs have lost sight of a basic distinction pointed out in Seibert v. Sears, Roebuck & Co. Superior Court of Alameda Co., May 2, 1972, (unpublished opinion) construing language similar to that of 69 P.S. § 1904 in the California statute (Civil Code, Section 1810.2) relevant to revolving credit transactions:

> In transactions such as revolving credit, any rate of cost quoted prospectively to the user of credit is by definition a nominal rate in the sense of being only an estimate of approximate cost. A true rate of yield, as distinguished from a nominal approximation, can only be computed retrospectively, after the precise dates of transactions are known. . . . (Id. at 16).

The *Seibert* court went on to hold that since the California statute regulated only the nominal rate, any disparity between it and the true rate yielded through the use of the previous balance method was not illegal in that state. The same situation exists in Pennsylvania. In passing the Sales Act in 1966 the Pennsylvania legislature exercised the same judgment made by the California legislature and examined in the *Seibert* case and the same judgment later made by Congress in passing the Truth in Lending Act. All three bodies passed legislation setting a nominal rate of interest for revolving credit transactions. Plaintiffs' dispute is not with that nominal rate but with the true rate yielded under the statute. I find as did the California court in *Seibert,* supra, and the

Ninth Circuit in Taylor v. R. H. Macy & Co., 481 F.2d 178 (9th Cir. 1973), considering the Truth in Lending Act, that the fact that the legislature considered the problem and did not feel it necessary to regulate or sanction either the previous balance or average daily balance method of computing interest on open-end revolving credit accounts, is persuasive evidence of the legality of those techniques.

For the reasons stated above, it would be inappropriate for this Court to second-guess the state legislature and hold the previous balance method to be illegal. Defendants' motion for summary judgment as to Count II of plaintiffs' complaint will be granted. An appropriate Order in accordance with this Opinion will be entered.