**Mary D. HAAS and John Mitchell, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**PITTSBURGH NATIONAL BANK et al., Defendants.**

Civ. A. No. 72–968.

United States District Court,
W. D. Pennsylvania.

Oct. 8, 1976.

Michael P. Malakoff, Louise Reiber Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for plaintiffs.

Alexander C. Sherrard, William M. Hoffman, Campbell, Thomas & Burke, Pittsburgh, Pa., for Pittsburgh National.

J. Tomlinson Fort, Edward W. Marsh, Gregory D. Curtis, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Mellon Bank.

Donald C. Bush, Dale P. Frayer, Anderson, Moreland & Bush, Pittsburgh, Pa., for Equibank.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

This familiar class action challenging the defendant national banks' computation of the interest service charge on goods and services purchased through the use of credit cards (Master Charge and BankAmericard) issued by the banks is presently before the Court on a question raised by defendants' motions for summary judgment as to count I of the complaint and for redefinition of the plaintiff class.

I do not think it necessary for present purposes that the Court once again plunge deep into the shifting historical and procedural currents of this protracted litigation.[1] However, some background is required in order to sharpen the focus on the rather narrow issue *sub judice.*

Plaintiff Mary Haas filed the instant action on November 13, 1972, on behalf of herself and a class of BankAmericard and Master Charge cardholders from all three defendant banks—Pittsburgh National Bank, Mellon Bank and Equibank. On August 6, 1973, I entered an Order certifying the Haas suit as a class action. The com-

---

1. For a detailed chronicle of this case, see *Haas v. Pittsburgh National Bank,* 60 F.R.D. 604 (W.D.Pa.1973), and *Haas v. Pittsburgh National Bank,* 526 F.2d 1083 (3d Cir. 1975).

plaint subsequently was amended to add plaintiff Mitchell as the representative of Equibank cardholders, and, by order of June 11, 1974, the plaintiff class was redefined to include all holders of BankAmericard and Master Charge credit cards issued by defendants who, during the period since November 13, 1970, were charged by such defendants a finance charge in connection with the purchase of goods or services.

Essentially, plaintiffs' complaint alleged that various practices of defendants resulted in the charging of interest at a rate in excess of that permitted by Pennsylvania law, in violation of the National Bank Act, 12 U.S.C. § 85. Specifically, plaintiffs claimed in count I of their complaint that the defendant banks were limited to charging all members of the plaintiff class one percent per month interest under the Pennsylvania Banking Code of 1965 (7 P.S. § 309). Plaintiffs further alleged that defendants' use of the "previous balance" method of computing the balance upon which a service charge is imposed and their compounding of interest on delinquent accounts were prohibited by Pennsylvania law.

On cross-motions for summary judgment, I found for defendants on all counts. *Haas v. Pittsburgh National Bank*, 381 F.Supp. 801 (W.D.Pa.1974). With respect to count I, this Court held that bank-operated credit card plans involving the purchase of goods and services are not subject to the Pennsylvania Banking Code's limitation to interest of one percent per month, but are governed by the Pennsylvania Sales Act, which provides that a service charge of one and one-quarter percent per month may be imposed (69 P.S. § 1101 *et seq.*).

On appeal (*Haas v. Pittsburgh National Bank*, 526 F.2d 1083 (3d Cir. 1975)), the Court of Appeals reversed as to the previous balance and compounding of interest claims. As to count I, the Third Circuit's intervening decision in *Acker v. Provident National Bank*, 512 F.2d 729 (1975), had

made it plain that a bank may impose a monthly service charge at the one and one-quarter percent rate on "consumer" transactions,[2] covered by the Sales Act, and that this Court's grant of summary judgment was therefore correct insofar as it constituted a determination that defendants could charge the higher interest rate on their credit card plans with regard to such consumer transactions. Accordingly, plaintiffs modified their claim on appeal, agreeing that *Acker, supra*, required rejection of their argument as to consumer transactions, but persisting in their contention that interest rates on "commercial" transactions—purchases of goods and services for business purposes—are regulated by the Banking Code and thereby limited to one percent per month.

Turning then to the count I claims of commercial-use creditcard holders (and noting defendants' objection on appeal that nominal plaintiffs "lack standing to challenge the interest rate charged on commercial transactions since the record does not demonstrate the nature of their purchases," *Haas v. Pittsburgh National Bank, supra*, 526 F.2d at 1087), the Court of Appeals remanded for a determination by the district court, in the exercise of its discretion, as to whether named plaintiffs could represent a class of cardholders who were charged interest on commercial transactions.

After subsequent depositions of nominal plaintiffs Haas and Mitchell revealed that neither plaintiff had made a business or commercial purchase with his or her BankAmericard or Master Charge card, defendants moved for summary judgment as to count I of the complaint and for a redefinition of the class to exclude commercial users of the two credit card plans and to include only those persons who utilized their BankAmericard or Master Charge cards for personal, family or household purposes. These motions are now pending before the Court. They will be denied.

---

**2.** "Consumer transactions comprise purchases of goods 'for use primarily for personal, family, or household purposes' and purchases of serv-

ices 'for other than a commercial or business use.' " *Haas v. Pittsburgh National Bank, supra*, 526 F.2d at 1087 (citations omitted).

It is of course clear that inasmuch as nominal plaintiffs Haas and Mitchell did not use their credit cards for business or commercial purposes during the time period covered by this litigation, they themselves lack standing to challenge the service charge rate imposed on commercial transactions by the defendant banks. The sole question presently before the Court is whether Haas and Mitchell nonetheless may represent a class of plaintiffs who do have standing on this issue. I do not think extensive analysis is required to discern the propriety of an affirmative answer to that question.

In this regard, it is to be noted initially that while the determination as to whether named plaintiffs may represent a class of bank cardholders charged more than one percent on commercial transactions has been "entrusted" to the discretion of this Court, it can hardly be said that our Court of Appeals has declined to indicate its view in this matter. Indeed, a fair reading of the relevant portion of the appellate court's opinion in this case impels the conclusion that the higher court believes that named plaintiffs meet the Rule 23 prerequisites pertinent to their representative status—typicality (Rule 23(a)(3)) and adequacy of representation (Rule 23(a)(4)). See *Haas v. Pittsburgh National Bank, supra*, 526 F.2d at 1088–1089. While this Court is neither bound nor inclined by temperament to adhere blindly to every mere suggestion (as contrasted to a holding) offered by an appellate court, I consider that in this instance the Court of Appeals has so expressed its views as to warrant the judgment that de-

nial of representative status to plaintiffs herein on Rule 23 grounds would be entirely inappropriate.

Moreover, I fully agree with the proposition that nominal plaintiffs satisfy the related requirements of Rule 23(a)(3) and (4). My thinking in this regard is virtually identical to that manifested in the opinion of the appellate court (*see Haas v. Pittsburgh National Bank, supra*, 526 F.2d at 1088–1089) and I do not deem it necessary to reiterate the reasoning set forth therein. Suffice it to say that, as noted by the Court of Appeals, the instant situation is plainly distinguishable from that which pertained in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) (holding on "typicality" grounds that a nominal plaintiff with a claim against one defendant could not represent a class of plaintiffs with claims against another defendant), and which in the instant case motivated this Court to require the addition of nominal plaintiff Mitchell to represent class members holding credit cards issued by defendant Equibank.

Here, named plaintiffs have claims against all three defendants. Such claims are not restricted to that originally asserted and remaining in count I, which Haas and Mitchell themselves lack standing to litigate, but include intimately related claims—involving interest compounding and use of the previous balance method of accounting—shared with all members of the plaintiff class. In such circumstances, named plaintiffs' claims cannot be deemed atypical of or antagonistic to [3] those of the class they represent.

---

**3.** It is appropriate at this point to address briefly one matter apparently not raised in the Court of Appeals. Defendants herein attack the adequacy of plaintiffs' representation on grounds of conflicting interests, stemming from the banks' suggestion that commercial users of their credit cards might be harmed if plaintiffs are permitted to represent them—this because defendants might decide to terminate business use of such cards if commercial transactions are eventually deemed subject to a one percent service charge limitation.

The realistic prospect for such a decision by defendants strikes the Court as rather dim. It

is in any event sufficient to state that defendants' suggestion cannot be characterized as anything more than pure speculation, supported only by the bare assertion in their brief that termination of business use would be "likely" if plaintiffs prevail on the count I claim. As the Court observed in *Robertson v. National Basketball Association*, 389 F.Supp. 867, 899 (S.D.N.Y.1975), "[c]lass action determination will not be denied . . . in the absence of a showing that the alleged potential conflicts are real probabilities and not mere imaginative speculation."

The Court has not failed to appreciate that defendants' central argument in support of their motions does not proceed on a Rule 23 basis, but is couched in standing terms—that is, that nominal plaintiffs Haas and Mitchell, who did not use their credit cards for business or commercial purposes during the applicable period, are barred by the standing doctrine from representing cardholders who did.

It is apparent that defendants' lack of standing argument was raised in the Court of Appeals; it would seem to me that rejection of that argument is implicit in the relevant portion of the higher court's opinion in this case. See *Haas v. Pittsburgh National Bank, supra,* 526 F.2d at 1087–1088. Even if not, I am independently persuaded by plaintiffs' cogent discussion of this issue (which we draw from liberally, *infra*) that the standing doctrine offers no impediment to plaintiffs' representation of the instant cardholder class.

As plaintiffs have observed, defendants' standing argument attempts to artificially fragmentize what is essentially a single or unitary action challenging the legality of the defendant banks' service charge rate on several different but closely related theories. It confuses standing to litigate the class action as a whole with the standing of plaintiffs Haas and Mitchell to personally recover for each different reason that the service charges might be excessive. If named plaintiffs sought to represent a class restricted to commercial users of defendants' credit cards alleging only that they were charged interest in excess of that permitted by the Pennsylvania Banking Code, they (plaintiffs), having failed to engage in any commercial credit card transactions, might not meet Article III case or controversy standing requirements, and accordingly might be unable to litigate this action on their own behalf or on behalf of the plaintiff class. Here, however, Haas and Mitchell continue to have viable claims of their own (also asserted on behalf of the class) and therefore satisfy constitutional standing requirements.

It is necessary to bear in mind that plaintiffs originally commenced a single action alleging that they and all other members of the cardholder class had been charged illegal interest in several different ways, and thus were entitled to recover a single statutory penalty equal to twice the amount of total interest paid (12 U.S.C. § 86; see *Haas v. Pittsburgh National Bank, supra,* 526 F.2d at 1089). Accordingly, this Court certified a single class of "all holders of Bank-Americard and Master Charge credit cards issued by defendants . . ., who were charged by such defendants a finance charge. . . ." Named plaintiffs' claims included, but were not limited to, the contention that the maximum interest which the defendant banks could lawfully charge them and all other members of the class was one percent per month. Haas and Mitchell subsequently lost this aspect of their individual cases with the judicial determination that their own consumer transactions are governed by the Sales Act. But inasmuch as named plaintiffs still have live personal claims on closely related issues, they are not retroactively deprived of Article III standing; nor are they precluded from litigating the count I claims of other class members.

In this regard, the recent decision of the Supreme Court in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), is pertinent. *Bowman* was a Title VII action for racially-based employment discrimination brought on behalf of a class of job applicants who sought hiring and retroactive seniority. The district court found that the named plaintiff representing the class in question was not entitled to the relief sought because he in fact had obtained a position with the defendant. The defendant urged that inasmuch as the representative plaintiff himself was not eligible for any hiring relief, ". . . he has no personal stake in the outcome and therefore the question whether nonemployee discriminates are entitled to an award of seniority when hired . . . is moot." *Franks v. Bowman, supra,* at 753, 96 S.Ct. at 1258, 47 L.Ed.2d at 455.

The Supreme Court rejected defendant Bowman's argument, holding that in class action litigation, where the requisite Article III case or controversy existed at the time suit was filed and a class has been properly certified, the necessary adversary relationship continues to exist with respect to the claims of unnamed class members regardless of whether *vel non* the named plaintiffs eventually prevail on their personal claims. *Franks v. Bowman, supra*, at 752–757, 96 S.Ct. at 1258–60, 47 L.Ed.2d at 455–457. See also *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

The Supreme Court's holding in *Bowman* would seem clearly applicable to the instant claims of commercial use cardholders. While *Bowman* involved a mootness contention rather than a lack of standing claim, the circumstances of that case are nearly indistinguishable from those *sub judice*, and the cases cited with approval by the *Bowman* Court would seem to indicate that the *Bowman* rationale is fully applicable herein. See *Franks v. Bowman, supra*, at 754, 96 S.Ct. at 1259, 47 L.Ed.2d at 456, n. 7.

Much as in *Bowman*, the defendant banks submit that because nominal plaintiffs themselves are not entitled to pay interest at a rate limited to one percent per month, they have no personal stake in the outcome of the dispute between defendants and unnamed class members who continue to have a claim that their transactions are governed by the Banking Code and subject to a maximum one percent interest rate. Although plaintiffs Haas and Mitchell now lack personal standing on the issue of whether commercial transactions are regulated by the Banking Code, an ". . . adversary relationship obviously obtain(s) as to unnamed class members with respect to the underlying cause of action . . . ." *Franks v. Bowman, supra*, at 756, 96 S.Ct. at 1260, 47 L.Ed.2d at 457. The fact that Haas and Mitchell are presently precluded from claiming that the banks can charge no more than one percent per month interest on plaintiffs' own credit card transactions does not operate to deprive the Court of the power to determine the claims of unnamed class members.

■ Our conclusion that, under *Franks v. Bowman*, the class already certified has standing independent of the merits of named plaintiffs' claims aside, we fully adhere to plaintiffs' suggestion that a representative plaintiff who fulfills the Article III case or controversy requirement is not limited by the standing doctrine to litigating the claims of class members which are identical to his own.

In this regard, the Supreme Court's decision in *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), is instructive. That case sets forth a two-step standing analysis applicable in actions litigated by private parties alleging violations of federal statutes—plaintiffs seeking review: (1) must have suffered an injury, 405 U.S. at 733, 735, 92 S.Ct. 1361, and (2) such injury must be "to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes", 405 U.S. at 733, 92 S.Ct. at 1365.

In the instant case, nominal plaintiffs both allege that they personally were injured by the assessment of excessive finance charges on defendants' credit card plans. The interest in not being overcharged by national banks is precisely that protected by the National Bank Act, which prohibits a national bank from charging interest at a rate in excess of that permitted by the state in which it is located (§ 85) and delegates to private parties enforcement of the Act, by providing those parties injured, a cause of action in federal court for twice the total amount of interest paid (§ 86).

Moreover, it is clear from *Sierra Club* that a party who avers injury sufficient to properly invoke the judicial process is not limited to arguing his own immediate interests—if the *Sierra Club* plaintiffs had met standing requirements, they also could have argued the interests of the general public, and this was so whether or not all members of the general public would have suffered the same individualized injury or suffered the same injury in the same manner.

Similarly, there is in the present case no constitutional reason why named plaintiffs claiming to have suffered injury from defendants' policy of charging allegedly excessive interest should be limited to representing only those persons who have been charged excessive interest in an identical manner—that is, on consumer transactions where the excessive charges resulted from use of the previous balance method of accounting and the compounding of interest on delinquent accounts.

Having properly invoked the judicial process, Haas and Mitchell may assert the interests of those class members allegedly injured by defendants' assessment of one and one-quarter percent interest on commercial purchases. Although neither named plaintiff engaged in a business or commercial transaction during the relevant period, they may represent the entire class as presently defined, the members of which all have closely related claims arising out of defendants' BankAmericard and Master Charge plans. The standing doctrine does not operate to bar plaintiffs from representing those commercial purpose users of defendants' credit cards who, like Haas and Mitchell, have a 12 U.S.C. § 86 claim against defendants arising out of the operation of the banks' credit card plans.

For the reasons set forth above, defendants' motions for summary judgment as to count I and for a redefinition of the plaintiff class will be denied. An appropriate Order shall issue.

### ORDER

AND NOW, to-wit, this 8th day of October, 1976, in accordance with the foregoing Memorandum Opinion in the above-captioned case, IT IS ORDERED that defendants' motions for summary judgment as to count I of the complaint and for a redefinition of a plaintiff class be and the same are hereby denied.