**Mary D. HAAS and John Mitchell, Individually and on behalf of all other persons similarly situated, Plaintiffs,**

v.

**PITTSBURGH NATIONAL BANK, Mellon Bank, N.A. and Equibank N.A., all National Banking Corporations, Defendants.**

Civ. A. No. 72–968.

United States District Court,
W. D. Pennsylvania.

May 24, 1979.

These words could hardly be more applicable to the issue before the court and amply support our decision.

Michael P. Malakoff, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for plaintiffs.

H. Woodruff Turner, Kirkpatrick, Lockhart, Johnson & Hutchison, Allen N. Brunwasser, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

The case *sub judice* was commenced as a class action on November 13, 1972. In the complaint and amended complaint, it was alleged that defendants, Pittsburgh National Bank (PNB), Mellon Bank, N.A. (Mellon) and Equibank, N.A. (Equibank) (hereinafter designated defendant banks), violated the National Bank Act, *12 U.S.C. Sec. 85*, with respect to the calculation of interest on Mellon and Equibank Master Charge credit card accounts and on PNB BankAmericard accounts involving the purchase of goods or services (1) by use of the previous balance method of accounting, (2) by employing the practice of charging interest on an account balance that included unpaid interest and (3) by charging more than one percent interest per month on purchases of goods or services.

Representative plaintiffs and the class they represent sought to recover statutory damages under the National Bank Act, *12 U.S.C. Sec. 86*, of twice the amount of interest paid in allegedly usurious Master Charge and BankAmericard transactions during the two-year period preceding the commencement of this action.

In their answers and amended answers, defendant banks raised various affirmative defenses. Among other defenses, defendant banks asserted that they could charge interest at the rate of 1¼ percent per month as authorized by the Pennsylvania Goods and Services Installment Sales Act, *69 P.S. Sec. 1101, et seq.* (hereinafter Sales Act) and that the Sales Act permitted the use of the previous balance method of accounting and the practice of charging interest on an account balance that included unpaid interest.

Initially, serious questions arose as to whether the Court had jurisdiction over plaintiffs' causes of action, and, in addition, whether the action could be maintained as a class action. On August 6, 1973 this Court held that it had jurisdiction of the action, that the doctrine of abstention was not applicable, and certified a class defined as

those persons who then held, or held in the two years preceding the filing of the complaint, charge cards issued by defendant banks. *Haas v. Pittsburgh National Bank, 60 F.R.D. 604 (W.D.Pa.1973).*

Subsequently, on cross motions for summary judgment, this Court, on September 24, 1974 entered judgment in favor of defendant banks, ruling that they could charge credit card customers interest or a service charge of 1¼ percent per month, that the previous balance method of computation was authorized by the Sales Act and that unpaid service charges could be included in the balance subject to a service charge. *Haas v. Pittsburgh National Bank, 381 F.Supp. 801 (W.D.Pa.1974).* Upon appeal, the United States Court of Appeals for the Third Circuit ordered that the judgment of this Court be affirmed insofar as it permitted a service charge of 1¼ percent per month on bank operated credit card plans involving consumer transactions regulated by the Sales Act of Pennsylvania, and otherwise reversed and remanded with Circuit Judge Van Dusen dissenting in part. *Haas v. Pittsburgh National Bank, 526 F.2d 1083 (3d Cir. 1975).*

Then, on October 8, 1976, on the banks' motion for partial summary judgment and for redefinition of the class, this Court held that representative plaintiffs could represent cardholders who used their Master Charge or BankAmericard accounts to make commercial purchases of goods or services. *Haas v. Pittsburgh National Bank, 72 F.R.D. 174 (W.D.Pa.1976).*

After the protracted proceedings just described, the representative plaintiff, Mary D. Haas, entered into a settlement agreement with Mellon Bank on March 25, 1977 agreeing to settle her claim and the class claims against Mellon for $1,250,000.00; the representative plaintiff, John D. Mitchell, entered into a settlement agreement with Equibank on April 6, 1977 agreeing to settle his claim and the class claims against Equibank for $60,000.00; and, the representative plaintiff, Mary D. Haas, entered into a settlement agreement with PNB on April 18, 1977 agreeing to settle her claim and the

class claims against PNB for $1,450,000.00. Therefore, as of April 20, 1977, plaintiffs had secured a recovery against all three banks totalling $2,760,000.00 and counsel for plaintiffs by all indications were extremely satisfied. Shortly thereafter, however, the ugly serpent of attorneys fees reared its head and suddenly counsel for plaintiffs were disenchanted with the Court through which they attained a recovery of $2,760,000.00.

■ The petition for attorneys fees filed in this case by plaintiffs' attorneys requested a total amount of $607,200.00 for legal services, costs and expenses. Very substantial hourly rates for a large number of hours were requested for counsel that were relatively recently admitted to the bar. In one instance, very substantial fees were claimed for time for one who was still a law school student. Further, one of the petitioning attorneys had claimed hours in another case which were questioned as to reliability by another judge. Confronted with the request for such high counsel fees, and finding defendant banks indifferent to the amount of an award of such fees due to the defendant banks having agreed to contribute a fixed sum of money in settlement of the suit regardless of the portion allocated to counsel fees, the Court appointed a guardian ad litem for the class. The intended function of the guardian ad litem was to represent the interest of the class in seeing that only reasonable attorneys fees are awarded out of the class settlement fund. This Court felt it inappropriate to act both as "devil's advocate" on behalf of the class and finder of reasonable counsel fees. Beyond that, the Court has neither the time nor the resources to conduct the type of exhaustive investigation necessary to insure that only appropriate counsel fees are awarded. See *Haas v. Pittsburgh National Bank, 77 F.R.D. 382 (W.D.Pa.1977).* The appointment of the guardian ad litem to represent the interest of the class for purposes of determining attorneys fees was met with considerable disfavor from counsel for plaintiffs. Attorney James Joseph raised no question, although a fee petition-

er, because he has no real interest in the award. The largest part of any fee award will go to Morris Berger, William Berger and Daniel Berger whose principal role in the case seems to have been financing it. Despite this, I remain convinced of the wisdom of such appointment when the fee is to be paid out of the class recovery. Petitioning counsel contend that there is some significance to the fact that the members of the class, with one exception, have not objected to fees of over $250 per hour. This is hardly unusual since the class members individually will recover something less than $12.00 each. Counsel for plaintiffs became so outraged with the Court that they moved for statutory recusal asserting that the Court had a personal bias and prejudice against them in class action litigation. The prejudice and bias was evidently of recent development for no such allegations were set forth during class certification or any of the other stages of litigation leading to the $2,760,000.00 settlement. On June 20, 1978, this Court reviewed the allegations of counsel for the plaintiffs and determined that the Court was not required to recuse itself from the instant litigation. As a result of the attorneys fee hearing currently being conducted in the case *sub judice*, while still clinging firmly to the belief that recusal is not mandated by statute, this Court feels compelled to consider *sua sponte* whether or not recusal as a discretionary matter is now warranted.

Testimony at the attorneys fee hearing under questioning by intervenor attorney Allen Brunwasser, disclosed that lead counsel for the plaintiffs, Michael P. Malakoff, may have been involved in an attempt to intimidate the Court in the instant case through a series of newspaper articles critical of this Court. Furthermore, the intervenor's questioning tends to indicate that Judge Eugene Strassburger, also a fee petitioner in the instant case, initiated the newspaper articles by referring certain representatives of the press to Michael P. Malakoff with knowledge of Mr. Malakoff's unfavorable attitude toward this Court and also with knowledge of the pending disposition of the attorneys fee question affecting both Mr. Malakoff and himself.

Specifically, the evidence at the attorneys fee hearing tended to reveal that two reporters who were writing a series of articles on the "federal judiciary" talked with Judge Strassburger with a view towards writing an article on class action litigation. The reason for this inquiry is difficult to understand since the judge has sat only in family court and testified that he knew nothing about class actions. Judge Strassburger referred them to Mr. Malakoff for information concerning the potential article. Upon being contacted by the reporters, Mr. Malakoff, with knowledge of the pendency of the attorneys fee determination, nonetheless obviously provided source material for a series of baseless articles highly critical of this Court. The conduct of both Judge Strassburger and Mr. Malakoff under the circumstances permits the inference that they engaged in an intentional attempt to influence and pressure this Court to make a favorable disposition of their attorneys fees request. Whether or not such conduct was intentional and/or malicious bears significantly on the credibility of the attorneys requesting fees in the instant case. Credibility is always a crucial factor in an attorneys fee hearing due to the inherent inadequacy of time records. They invariably must be supplemented with the testimony of the fee petitioners themselves concerning the actual services performed. Therefore, this Court's determination as to whether or not two of the fee petitioners in the case *sub judice* intentionally attempted to influence the Court's decision by using the news agency impacts directly upon the award of reasonable attorneys fees for reasonable time worked. Unfortunately, the very court which may have been the object of a personal vendetta by counsel for plaintiffs would be called upon to be the finder of fact concerning circumstances surrounding the purported intimidation. Although admittedly difficult, this Court continues to believe that it could arrive at reasonable attorney compensation with requisite judicial objectivity. However, the actions of Judge Strassburger and

Mr. Malakoff have made it exceedingly difficult for such a decision to maintain the appearance of fairness. Should fees be favorably awarded to the petitioners, the specter of the condemning news articles lurks in the background as a perceived cause. On the other hand, should the award of attorneys fees focus unfavorably upon the petitioners, it is a certainty that personal vengeance and retribution will lurk in the background as the perceived cause. Judge Strassburger and Mr. Malakoff have created an atmosphere under which it is impossible to maintain the appearance of judicial fairness even though this Court with sincerity and to the best of its ability would attempt to set an unbiased, reasonable attorneys fee. Accordingly, with great reluctance, this Court deems the cause of justice in the instant case to be best served by recusal.

The Court is mindful of the additional expense and delay occasioned by the instant recusal. The goals and ends of justice, however, appear to require the action now taken and therefore predominate over practical considerations. Perhaps the judge to whom the case is subsequently assigned can incorporate the testimony already given before this Court as part of the record. However, it is this Court's intention that the newly assigned judge have absolute discretion in deciding what course the request for attorneys fees should henceforth take and the preceding suggestion is offered only as a possible alternative to be considered.

Additionally, substantial controversy arose at the attorneys fee hearing over the invocation by Mr. Malakoff of a qualified First Amendment privilege alleged to be applicable when questioned concerning his role in the news agency articles. It is similarly this Court's intention with regard to the invocation of the First Amendment privilege that the Judge to whom the instant case is subsequently assigned address the problem in any manner whatsoever that he deems appropriate without regard for this Court's prior actions.

My decision to recuse comes only after considerable reflection and with the greatest reluctance. However, I am not prepared at this point in time to retrench from my position that the Court should not assume conflicting roles. Just as I could not represent the class in the attorneys fee hearing and be finder of reasonable attorneys fees at the same time, it is equally impractical for the Court as a potential object of intentional intimidation to also be finder of fact upon that issue. It is important to note that the views of the news media on pending legal matters in and of itself should not and would not affect me in any way and would not, of themselves, cause recusal. I am taking this action only because the unusual action by the petitioners combined with the unfortunate timing of the media stories seem to me to require it. It is extremely difficult to recuse and impossible not to.