[Civ. No. 33176. First Dist., Div. Four. Oct. 25, 1973.]

BUDGET FINANCE PLAN et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
JOHN McDOWELL et al., Real Parties in Interest.

## COUNSEL

Severson, Werson, Berke & Melchior, Edmund T. King II, Bernardus J. Smit and Jan T. Chilton for Petitioners.

No appearance for Respondent.

Don Gartner, William H. Card, Wyckoff, Parker, Boyle & Pope and Bruce A. Richardson for Real Parties in Interest.

Richard A. Elbrecht as Amicus Curiae on behalf of Real Parties in Interest.

## OPINION

**DEVINE, P. J.**—Petitioners seek a writ of mandate directing respondent court to vacate its order commanding petitioners to answer interrogatories. The action in which the interrogatories had been put is one wherein John McDowell and Lucylle Miller (real parties in interest) seek, on behalf of themselves and others of an alleged class, rescission of retail installment sales contracts, treble damages, injunction against further asserted violations of the California Consumers Legal Remedies Act, and attorneys' fees of $500 for each person found to be a member of the class.

The primary malefactors, according to the allegations of the complaint, are one Jack Felix, doing business under the impressive name Apollo Industries, and his franchisor, Family Buying Power, Inc., a New Jersey corporation. It is alleged that representations were made by agents of these two to plaintiffs (and assertedly to others) that by joining a "buying club" they could purchase merchandise at reduced prices, and that a particular stereo set (which was exhibited to the prospective initiates to the club) was available at about half its retail price. Installment contracts and membership certificates were then produced, and were signed by plaintiffs. The contracts were then assigned to petitioners or to another financing agency, Morris Plan Company of California. Falsity of the representations is alleged, and violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). Plaintiffs pray that every member of the class of asserted victims be identified, notified of the action and invited to participate in it.

A demurrer to the complaint was filed by each of the petitioners and was sustained, but with leave to amend. The demurrers apparently were sustained on the proposition that plaintiffs had not alleged that their particular contracts with Family Buying Power, Inc. were assigned to Budget Finance Plan or C.I.T. Financial Services, and therefore that plaintiffs have no legal capacity to sue. But plaintiffs take the position that each of the petitioners for the writ *did* finance transactions which had been executed by the Felix agency, and that plaintiffs are entitled to know who were the

residents of Santa Cruz County who signed contracts with Felix, Apollo Industries or Family Buying Power, which were later assigned to petitioners, and to know the details of the transactions. To this end, they proposed interrogatories, which are not presently challenged as to form or as to relevance in their particulars. Petitioners were ordered by the court to answer the interrogatories; whereupon, petitioners have sought a writ compelling nullification of that order.

## I. Status of the Action

■ Petitioners contend that general demurrer having been sustained, there is no pleading at all before the trial court, therefore no party, and therefore again, no one who can invoke the power of the court to conduct discovery, because Code of Civil Procedure section 2030, subdivision (a), provides for discovery at the instance of "any party." Petitioners cite, as authority for the proposition that after the sustaining of a demurrer there is neither a proper pleading nor a proper party before the court, the decisions of *Cohen* v. *Superior Court,* 244 Cal.App.2d 650 [53 Cal.Rptr. 378], *Malick* v. *American Sav. & Loan Assn.,* 273 Cal.App.2d 171 [79 Cal.Rptr. 499], and *Andelson* v. *Pacific Mutual,* 7 Cal.Disc.Proc. 34. But in *Cohen,* nothing is said to the effect that plaintiff ceased to be a *party* when a general demurrer to his complaint was sustained. It was simply held that the new pleading supplied by plaintiff must be more than an amendment to the former complaint, it must be a completely fresh pleading; the result was merely that although an order of the superior court denying a motion to *amend* the original complaint was sustained, a writ of mandate directed that court to permit the filing of an *amended complaint.* In *Malick,* it was held that a cross-complaint was a nullity where the general demurrer to the complaint had been sustained with leave to amend, but an amended complaint had not been filed. Plaintiff dismissed his action; the purported intervening cross-complaint was dismissed properly. Nothing was said to the effect that plaintiff was not a party during the interval between the sustaining of the demurrer and the dismissal. In the *Andelson* case, massive requests for admissions proposed by the defendant were merely postponed until demurrer setting up the statute of limitations should have been ruled upon, in order to avoid possibly idle, exacting effort.

If a plaintiff, demurrer to whose complaint had been sustained with leave to amend, were no longer a *party,* he could not dismiss the action if he were so advised, for Code of Civil Procedure section 581 refers to dismissal "by plaintiff" and "by either party, upon the written consent of the other." Nor could he appeal from a subsequent dismissal by the court because Code of Civil Procedure section 902 allows an appeal by "any

party aggrieved." But in *Berri* v. *Superior Court,* 43 Cal.2d 856 [279 P.2d 8], it was held that a *plaintiff* may have mandamus to order entry of judgment of dismissal where the trial court has refused it after order sustaining demurrer with leave to amend, so that plaintiff may be in position to appeal the judgment.

Nor could the trial court reconsider its ruling after sustaining an order sustaining a demurrer without leave to amend if the action were so obliterated as to destroy the very existence of a party as plaintiff; but it is established that the court may do so. (*Berri* v. *Superior Court, supra,* at p. 860; *Bank of America* v. *Superior Court,* 20 Cal.2d 697 [128 P.2d 357]; *Frantz* v. *Mallen,* 204 Cal. 159 [267 P. 314].)

In fact, to grant a plaintiff leave to amend (which should be allowed where the defect, though one of substance, may possibly be cured by supplying omitted allegations (*MacLeod* v. *Tribune Publishing Co.,* 52 Cal.2d 536, 542 [343 P.2d 36]; *Youngman* v. *Nevada Irrigation Dist.,* 70 Cal.2d 240, 251 [74 Cal.Rptr. 398, 449 P.2d 462])) in itself would be incongruous if plaintiff did not remain a party to the cause.

Since plaintiff does so remain, plaintiff is entitled to reasonable discovery, even to disclose facts essential to his stating a cause of action. Code of Civil Procedure section 2030 allows any party to file and serve written interrogatories on any other party.

## II. Class Action

The facts, so far as they may be learned at this incipient stage of the lawsuit, are to be found in the allegations of the complaint (at this point taken as true), from the petition for the writ, and from the return to the alternative writ, together with declarations accompanying each. Briefly stated, they are: Plaintiff McDowell bought a stereo set from Felix because of fraudulent representations, and signed the installment contract which he desires rescinded. The contract was assigned to Morris Plan Company, which is a defendant, but is not a petitioner for the writ. Plaintiff Miller bought a radar oven from Felix, but she financed the purchase by a direct loan of $570 from C.I.T. Financial Services (the proceeds were directed to Apollo Industries), and not by assignment from Felix. Budget Finance and C.I.T. make no denial, in the declarations of their officers, that they did finance Apollo contracts of persons other than plaintiffs.

### Community of Interest

The Felix operation was a classic kind of door-to-door sales solicitation disguised (if the salesman were proficient) as an invitation to join a pre-

ferred group of buyers. A "canned" speech was provided the solicitor, the reading of which (with its directions when to "break eye contact," when to "commit," and when to announce that the preferred purchasing service itself was not for sale even if a $1,000 check were given) would provide material for a satisfying satire. There was used even the device referred to in *Vasquez* v. *Superior Court,* 4 Cal.3d 800, 813, fn. 8 [94 Cal.Rptr. 796, 484 P.2d 964], of having the prospect list his usual expenses for various kinds of merchandise. There were, according to the pleadings, elements in the particular transactions of sameness of approach and persuasive effort, and of "membership" conferred on the buyer upon his purchasing of the product and the signing of the installment contract. Community of interest is sufficiently alleged to justify, at least at this early stage of the proceedings, a class action against Apollo and Family Buying Power, Inc., not only according to the standards of Civil Code section 1781, part of the Consumers Legal Remedies Act, but even by the decisional law as it existed before that act became effective. (*Daar* v. *Yellow Cab Co.,* 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]; *Vasquez* v. *Superior Court, supra,* at pp. 813-817.) Moreover, plaintiffs are entitled to have discovery directed towards appropriate parties in order to learn the names of other proper plaintiffs who may be of assistance in the presentation of the case and who may share the burdens of its prosecution. This is implied, at least in *Scott* v. *City of Indian Wells,* 6 Cal.3d 541, 550 [99 Cal.Rptr. 745, 492 P.2d 1137] (a class action, though not one involving "consumers"), wherein the court said that should the trial court conclude in what is prima facie a proper class action that the named plaintiffs may not adequately represent the class, it should afford them an opportunity to redefine the class or to add new individual plaintiffs. It follows that if discovery is necessary in order to do this, it should be made available.

But petitioners protest that because neither of them is an assignee of an Apollo contract executed by either of the plaintiffs, plaintiffs have no cause of action against petitioners, and plaintiffs cannot represent a class of adversaries to petitioners of which they are not members. Plaintiffs have suffered, and will suffer, no injury, even unintentional, at the hands of these defendants-petitioners.

But to hold with petitioners would be to give too narrow a breadth to the "class" which is essential to the bringing of a common action by persons commonly cozened. To allow them relief against Felix only would be futile —he has defaulted, his whereabouts are unknown, his records are unavailable. Ordinarily, consumer fraud class actions are contests between buyers and finance companies. They have a common potential adversary who frequently will be unable to respond to just demands of either. But the

finance companies have made the vendor's operation possible; in the present case, they supplied him with forms imprinted with their names, and discounted his paper. It is not alleged that the assistance which they have given has made them guilty participants in the deception practiced by the vendor; but their support of the enterprise by financial aid, even though done impersonally, does oblige them to reveal the identities of those whose contracts were assigned, so that effective class action may possibly be brought. If it were not so, righting of wrongs could be prevented by assignment by a larcenous purveyor to many financing agencies.

In *Payne* v. *United California Bank,* 23 Cal.App.3d 850 [100 Cal.Rptr. 672], on which petitioners place much reliance, it was held that where defendant bank had not financed any of the installment contracts between a seller and the named plaintiffs, these plaintiffs had not properly stated a class suit; they had no standing to represent a class of which they were not members. But there had been no attempt to amend to include a proper party plaintiff. In the case before us, plaintiffs are attempting, by the use of interrogatories, to discover others in the same position as themselves. They do not do this haphazardly; they have taken the deposition of Apollo's manager, and they have information therefrom of the discounting of Apollo contracts by petitioners.

In *La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113], it was stated that if the trial court concludes that the named plaintiffs can no longer suitably represent the class (there, because of yielding by defendant of an asserted right), it should afford plaintiffs the opportunity to amend their complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative. Petitioners point out a distinction between that case and this: in *La Sala,* there were at the commencement of the lawsuit, parties plaintiff who were truly members of the alleged class. The argument from the distinction is not persuasive. Plaintiffs in the case at bench were members of a class allegedly defrauded by a common entrepreneur using a common method. The action is against him as one defendant. His splitting of assignment of the contracts among three finance agencies should not protect those contracts against effective rescission by withholding of the identities of the persons dealing with him.

The class action for the benefit of consumers has been regarded favorably by judicial decisions such as *Daar* and *Vasquez, supra.* The Consumers Legal Remedies Act (which became effective later than the decision in *Daar* and during the period when *Vasquez* was pending in the Supreme Court) reinforces this disposition expressly by the terms of Civil Code

section 1760, which directs liberal construction and application of the act in order to protect consumers and "to provide efficient and economical procedures to secure such protection."

The petition for writ of mandate is denied and the alternative writ is discharged.

Rattigan, J., and Bray, J.,* concurred.

A petition for a rehearing was denied November 14, 1973, and petitioners' application for a hearing by the Supreme Court was denied December 19, 1973.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.