[S.F. No. 23483. Sept. 28, 1978.]

CIVIL SERVICE EMPLOYEES INSURANCE COMPANY,
Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
DONNA R. SCHLICHTING, Real Party in Interest.

364

**COUNSEL**

Bronson, Bronson & McKinnon, Jerald R. Cochran, Capps, Bishop, Marraccini & Ducey and Rodney A. Marraccini for Petitioner.

No appearance for Respondent.

Sager & Grassi, Ronald M. Grassi, Lewton & McGuinn and Michael Lewton for Real Party in Interest.

## OPINION

**TOBRINER, J.**—In 1971, plaintiff Donna R. Schlichting instituted the underlying class action against defendant Civil Service Employees Insurance Company, seeking to recover damages resulting from the defendant's refusal to pay benefits allegedly owed under a "medical expense" clause contained in an insurance policy. Plaintiff's complaint alleged that although defendant had agreed to reimburse insureds for all medical expenses incurred as a result of a covered automobile accident, defendant had adopted the practice of refusing to pay any such medical expenses that were also covered by separate health insurance, such as Blue Shield. In response, the insurer defended its practice on two grounds: (1) that in agreeing "to reimburse" insureds for medical expenses, it had clearly and unambiguously limited its obligation to out-of-pocket medical expenses, and (2) that Blue Shield and other health insurance plans constituted "automobile medical payments insurance" within the meaning of an exclusionary clause of its policy.

In the present proceeding, defendant insurer seeks a writ of mandate or prohibition to compel the trial court to vacate two pretrial orders rendered in favor of the plaintiff class in the underlying action. In the initial of the two orders, the trial court granted plaintiff's motion for partial summary judgment, rejecting as a matter of law defendant's proposed interpretation of the insurance policy. In the second order, rendered concurrently with the partial summary judgment order, the court ruled, inter alia, that defendant should initially bear the cost of notifying absent class members of the pendency of the action.

Defendant maintains that each of the challenged orders is constitutionally defective under principles of federal due process. Defendant argues that the partial summary judgment order is invalid on the ground that due process precludes a court from ever rendering a decision "on the merits" in a class action before notification to absent class members of the pendency of the action. Defendant asserts that the order requiring it

initially to bear the cost of notice fails on the ground that requirements of due process prohibit a trial court from ever compelling a defendant "to finance" a lawsuit against itself.

As we shall explain, we have concluded that, contrary to defendant's assertions, neither court order at issue here succumbs to constitutional attack. First, although defendant now claims that the trial court should have deferred a decision on the partial summary judgment motion until absent class members had been notified of the action, defendant never raised such an objection prior to the trial court's ruling on the motion. Instead, defendant confined its opposition to a substantive argument on the merits of plaintiff's motion. Under these circumstances, we conclude that defendant waived whatever constitutional right it may have enjoyed to require the court to postpone determination of the summary judgment motion until after class notification.

Second, while defendant maintains that a trial court lacks authority to order a defendant to bear the initial burden of notifying absent class members of the pendency of the suit, as we explain both a statutory provision of the California Consumer Legal Remedies Act (Civ. Code, § 1781, subd. (d)), and this court's seminal decision in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513], explicitly recognize that in a class action proceeding in this state, trial courts are empowered to "direct *either party* to notify each class member" of the pendency of the action. (Italics added.) Although defendant further contends that this statutorily authorized procedure violates its due process rights, the relevant constitutional authorities establish that the trial court order clearly conformed with governing principles of both substantive and procedural due process.

Accordingly, we conclude that the requested writ should be denied.

1. *The facts and proceedings below.*

In April 1971, plaintiff Donna R. Schlichting was injured in an automobile accident in Daly City, California. At the time of the accident, plaintiff held a comprehensive automobile and personal liability policy issued by defendant insurance company. Under part II of the policy, entitled "Expenses for Medical Services," the insurer agreed "[t]o reimburse [*the named insured*] *for all reasonable* [*medical*] *expenses incurred* within one year from the date of [an] accident" (italics added) for

bodily injuries sustained in such an accident. An additional provision of part II, entitled "Other Insurance," provided, however, that "[i]f the insured has *automobile medical payments insurance* with another insurer against a loss covered by Part II" (italics added), the insurer's liability would be reduced in proportion to such other available automobile medical payments insurance.

At the time of the accident, plaintiff did not have any other automobile insurance to cover her medical expenses. She had, however, purchased health insurance from California Physicians' Service (Blue Shield), and under that insurance plan Blue Shield paid a portion of the medical expenses which plaintiff incurred as a result of the automobile accident.

In May 1971, plaintiff filed a claim with defendant insurer requesting payment of all medical expenses incurred as a result of the accident, including approximately $350 in medical expenses which were covered under the Blue Shield policy. The insurer, while agreeing to pay the out-of-pocket medical expenses which plaintiff had personally paid, rejected the $350 claim for the expenses covered by Blue Shield, taking the position that the medical payment coverage of its policy did not encompass such expenses.

In October 1971, plaintiff filed the underlying class action against defendant insurer on behalf of herself and similarly situated insureds who, within the preceding four years (the applicable statute of limitation period), had had claims for medical payment reimbursement denied by defendant under similar circumstances.[1] The complaint set forth the facts described above, attached the insurance policy under which plaintiff was assertedly covered, and alleged that the insurer had breached the contract

---

[1] In support of the maintenance of the suit as a class action, the complaint alleged, inter alia, that the class of insureds improperly denied reimbursement was so large that it was impractical to bring all class members before the court individually. The complaint additionally asserted that "the members of plaintiff's class are persons whose reimbursement entitlement is relatively small [generally less than $500] . . . and as to all of them the reasonable value of the time required to be expended in determining the facts, prosecuting the claim for damages, proving and collecting same from the defendants, would be more than the amount that is owed to the individual class members. . . ." Finally, the complaint stated that defendant insurer had maintained its allegedly erroneous interpretation of the policy's reimbursement clause "with the knowledge that the individual members of the plaintiff class are, as a practical matter, unable to pursue the recovery of such sums"; the complaint averred that in the absence of a class action, defendant would improperly retain substantial sums which, under a proper interpretation of the insurance policy, should rightfully have been paid to members of the plaintiff class.

in failing to pay *all* medical expenses plaintiff had incurred as the result of a covered accident.

Shortly thereafter, defendant filed an answer to the complaint, conceding that plaintiff was insured under the policy attached to the complaint and interposing a general denial to the remainder of the complaint's allegations. In addition, defendant set forth in its answer a number of ostensible "affirmative defenses" to the action; only two of these affirmative defenses are of significance for this proceeding.[2] In its twelfth affirmative defense, defendant asserted that plaintiff's complaint rested on a misinterpretation of the insuring clause of the medical expense section of the policy, and alleged that the policy's use of the term "reimburse" made it clear that the insurer's liability was limited to out-of-pocket medical expenses paid by its insured. In its thirteenth affirmative defense, defendant alleged that plaintiff's Blue Shield policy constituted "other automobile medical payments insurance" within the meaning of the "other insurance" clause of the policy.

After the filing of the pleadings, the parties repeatedly attempted to agree upon a mutually acceptable stipulation of facts upon which the legal issues of the case could be decided,[3] but defendant in June 1975 finally indicated that it would not concur in any such stipulation. Plaintiff's attorneys thereafter began the task of attempting to identify the members of the class in preparation for bringing the case to trial. For several weeks during the summer of 1975, plaintiff's attorneys examined defendant's insurance records for the years 1969-1971 and identified 172

---

[2] Although the answer contained a total of 15 ostensible "affirmative defenses," the bulk of these were more in the nature of general and special demurrers than defenses. The first through sixth affirmative defenses alleged that the complaint as a whole, and each individual count, failed to state a· cause of action; the seventh through eleventh affirmative defenses alleged that the complaint as a whole and individual counts were "uncertain and ambiguous." The fourteenth affirmative defense alleged in conclusory terms that the members of the plaintiff class had not complied with all the terms of the policy, and the fifteenth defense alleged that because of the ambiguities of the complaint defendant was unable to anticipate all of its defenses.

[3] These efforts were apparently undertaken at least in part in the hope of avoiding unnecessary effort and expense in the identification and notification of absent class members. Defendant was put on notice early in the litigation that it might be required to bear some of such effort and expense, when plaintiff served it with interrogatories requesting it to identify, from its records, all those insureds who, over the previous four years, had had claims for benefits denied under circumstances similar to that of the plaintiff. The parties apparently reasoned that if, on the basis of stipulated facts, the court agreed with defendant's interpretation of the policy, plaintiff would not pursue the action and the identification and notice expenses would be obviated.

insureds who had had claims rejected under circumstances similar to the plaintiff's case. At this time, however, defendant informed plaintiff that, despite the pendency of the action, defendant had destroyed all records pertaining to pre-1969 medical payment claims.

Shortly thereafter, plaintiff filed the two pretrial motions that ultimately gave rise to the instant writ proceeding. On November 28, 1975, plaintiff filed a motion for certification of the suit as a class action and for an order notifying class members of the suit's pendency. In this motion, plaintiff advised the court that her attorney had, through review of the records made available by defendant, identified 172 members of her class, but additionally informed the court that defendant had destroyed the relevant records with respect to pre-1969 claims; plaintiff accordingly requested that, at least with respect to notifying potential class members who could not readily be identified because of the destruction of records, defendant should bear the cost of notice, by means of publication or otherwise.

The following week, plaintiff filed an additional pretrial motion, pursuant to section 437c of the Code of Civil Procedure, seeking partial summary judgment with respect to the issues raised by defendant's twelfth and thirteenth affirmative defenses. As a practical matter this motion requested the court to resolve the principal legal issue presented by the case, namely, whether or not the policy obligated defendant to pay medical expenses which had been incurred by an insured as the result of a covered accident but which were also included within a separate health insurance policy.

Defendant filed separate oppositions to plaintiff's motions. In response to the request for partial summary judgment, defendant did not claim that the motion was premature or that its consideration should be postponed until absent class members had been notified of the action, but instead simply contested the merits of the motion, arguing that plaintiff's interpretation of the policy's medical expense clause was incorrect. In answering plaintiff's class certification motion, defendant did not assert that it could not properly be required to bear any cost of notice, but merely suggested that the class should be defined in somewhat narrower terms than plaintiff had proposed.

The trial court held a hearing on plaintiff's pretrial motions on December 17, 1975, and December 31, 1975, and on January 19, 1976, the

trial court filed the two orders that are challenged in this proceeding. In one order, the trial court granted plaintiff's motion for partial summary judgment, concluding that plaintiff's proposed interpretation of the insurance policy was correct as a matter of law, and consequently that defendant's principal "affirmative defenses" were without merit.

In the other order, the court first certified the case as a class action, indicating that the parties had entered into a stipulation approved by the court as to the proper designation of the class represented by plaintiff. Then, after indicating the form and nature of the notice that was to be given to absent class members, the order directed defendant to "do all work necessary for the mailing and publication of notice of pendency of class action" and provided that, as an initial matter, defendant should bear the expense of the cost of notice. The order also stipulated, however, that the cost of notice was a "recoverable cost to the prevailing party in this action" and indicated that, if defendant ultimately prevailed in the action, it would be entitled to recover from plaintiff notice costs up to at least $10,000.[4]

After the trial court rejected a flurry of subsequent motions urging reconsideration and modification of the January 19 orders,[5] defendant

---

[4]The three paragraphs of the class certification order directed to the cost of notice issue read in full: "7. The Court further orders that the defendant is [to] do all work necessary for the mailing and publication of notice of pendency of class action. [¶] 8. The Court orders that the cost of notice is a recoverable cost to the prevailing party in this action. [¶] 9. The costs of mailing and publishing notice are to be split equally between the plaintiff and defendant for the first $20,000 of such cost, and the defendant alone shall bear all costs above $20,000. Further, the plaintiff is not required to pay costs of notice until such time as judgment is rendered in this action, and then only if plaintiff is not the prevailing party."

Although paragraph 9 appears ambiguous on its face, at one point indicating that the parties are to split the first $20,000 of the cost of notice and at another point stipulating that plaintiff need not pay any costs of notice until and unless judgment is entered against her, both parties construe the order as placing the initial notice cost burden on defendant. Since the order is reasonably susceptible to that interpretation, we proceed from the assumption that the parties have accurately characterized the intent and effect of the trial court's order.

[5]On March 5, 1975, a month and a half after the trial court's orders were filed, defendant requested that the court "modify" its partial summary judgment order to specify that such order applied only to the named plaintiff and not to all members of the plaintiff class. Citing *Home Sav. & Loan Assn.* v. *Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal.Rptr. 511] (*Home II*) for the first time, defendant contended that since absent class members had not been notified of the suit prior to the court's summary judgment ruling, the class should not receive any benefits from the order. The trial court denied this motion on March 16.

A week later, on March 24, 1975, defendant filed another motion which sought (1)

filed the instant writ proceeding, seeking a writ of mandate or prohibition to compel the trial court to vacate its pretrial orders insofar as such orders granted partial summary judgment to plaintiff class and directed defendant to bear the initial expense of notifying the absent class members of the pendency of the action. Concluding that the issues raised by the petition involved questions of general significance for class action litigation throughout the state, we exercised our discretion and issued an alternative writ. (See, e.g., *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 806-807; *Trani* v. *R. G. Hohman Enterprises, Inc.* (1975) 52 Cal.App.3d 314, 316 [125 Cal.Rptr. 34].) Both parties concede that the question of the validity of the trial court's orders is properly before us. We turn first to defendant's attack on the partial summary judgment order.

2. ■ *By failing to object to the trial court's determination of plaintiff's motion for partial summary judgment prior to class notification, defendant waived any right it may have had to postpone such a ruling until after such notice was provided.*

In this proceeding, defendant challenges the trial court's partial summary judgment order solely on procedural grounds, and raises no question as to the substantive merits of that ruling. Accordingly, the validity of the trial court's interpretation of the insurance policy is not before us and we express no view on that matter. Defendant argues only that, under the due process clause of the federal Constitution, a trial court lacks authority to pass on the merits of a plaintiff's substantive claim in a class action before notification of the pendency of the action to the absent class members; since the partial summary judgment order in this case was entered prior to such notification, defendant maintains that the order is constitutionally defective.

---

leave to amend the answer and (2) to have the action "decertified" as a class action. In this motion defendant claimed that it had just discovered that, at the time of plaintiff's injury, plaintiff's policy contained an endorsement which modified the terminology of the "medical expense" coverage. Defendant contended that the change in language was significant and demonstrated that plaintiff was not a proper representative of the class. On April 16, the trial court granted defendant leave to amend its answer, but denied the request for decertification of the class, concluding that the alleged alteration in the insurance policy's language did not alter the class action aspect of the case.

Although defendant, in its March 24 motion, did raise a general challenge to the propriety of the class certification order, the record before us fails to indicate that defendant ever raised at the trial court level its present constitutional objection to the imposition of notice costs.

Defendant's argument is premised largely on two California Court of Appeal decisions, *Home Sav. & Loan Assn.* v. *Superior Court* (1975) 42 Cal.App.3d 1006 [117 Cal.Rptr. 485] (*Home I*) and *Home Sav. & Loan Assn.* v. *Superior Court, supra,* 54 Cal.App.3d 208 (*Home II*). As our court noted last year in summarizing the *Home I* and *Home II* decisions in *People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 16 [141 Cal.Rptr. 20, 569 P.2d 125], those decisions concluded "that a defendant in a class action has a due process right to secure a determination of the issues relating to the suitability of the action as a class matter as well as the composition of the class and the form of notice to the members, prior to determination of the merits of the action."

As we explained in *Pacific Land Research,* in arriving at this conclusion the *Home* decisions reasoned that "unless a decision on the merits is postponed until after the class issues are decided, a defendant is subject to 'one-way intervention,' which would allow potential class members to elect whether to join in the action depending upon the outcome of the decision on the merits." (*Id.*) The *Home* decisions considered this consequence fundamentally unfair to defendants, noting that while a defendant would be bound by an adverse ruling under collateral estoppel principles, the defendant would not necessarily gain a commensurate victory if it prevailed, since the ruling in its favor would not be binding on class members who had no notice of the proceeding.

In *Pacific Land Research* we found it unnecessary to examine the validity of the *Home* decisions' conclusion that such asserted unfairness to defendants amounts to a denial of due process so as to preclude a trial court from pursuing such a procedure over a defendant's objection. (Cf. *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 812 [122 P.2d 892]; *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 968-969 [124 Cal.Rptr. 376].) In *Pacific Land Research* we concluded that, even assuming that the reasoning of the *Home* decisions was sound, such reasoning did not apply to a consumer protection action, such as that case, brought by the Attorney General on behalf of the general public. Consequently, we held in *Pacific Land Research* that in such a public consumer protection action a trial court could pass on the merits of the case, over a defendant's objection, even though the allegedly defrauded consumers on whose behalf restitution was sought had not been notified of the action and consequently would not be bound, under res judicata or collateral estoppel principles, by a decision in defendant's favor. (See 20 Cal.3d at pp. 17-20.)

In the instant case, unlike *Pacific Land Research,* the propriety of the trial court's action arises in the context of a traditional privately initiated class action, rather than an Attorney General-instituted consumer protection action. Nevertheless, as in *Pacific Land Research,* we have determined that we again need not pass on the soundness of the *Home* decisions' due process analysis because, even if we assume arguendo that such analysis is correct, the partial summary judgment order at issue here nonetheless must be upheld since defendant waived whatever rights may be afforded by the *Home* decisions.

As we have seen, after plaintiff filed its motion for partial summary judgment defendant did not object to the trial court's entertainment of the motion prior to class certification but instead simply contested the motion on the merits; at no time prior to the court's ruling did defendant urge the prematurity of the motion. Not until defendant's argument on the merits had been rejected by the trial court did defendant complain of the procedural posture of the case and raise the due process argument upon which it now relies. Under these circumstances, we believe that defendant waived whatever due process rights it may have had to object to the court's resolution of the partial summary judgment motion prior to class notification.

Previous class action authorities, including the *Home II* decision relied upon by defendant, uniformly support our conclusion that a defendant waives whatever due process rights it may possess when it voluntarily accedes to a trial court decision on the merits of an issue before notice is provided to absent class members. (See, e.g., *Home II, supra,* 54 Cal.App.3d 208, 212; *Colwell Co.* v. *Superior Court* (1975) 50 Cal.App.3d 32, 34-35 [123 Cal.Rptr. 228]; *Roberts* v. *American Airlines, Inc.* (7th Cir. 1975) 526 F.2d 757, 762-763, cert. den. (1976) 425 U.S. 951 [48 L.Ed.2d 195, 96 S.Ct. 1726]; *Katz* v. *Carte Blanche Corporation* (3d Cir. 1974) 496 F.2d 747, 758-762; *Haas* v. *Pittsburgh National Bank* (W.D.Pa. 1974) 381 F.Supp. 801, 805-806.)

As the decisions recognize, there are many reasons why a defendant may be willing, indeed even eager, to forego class notification prior to adjudication of some, or even all, of the principal legal issues in a case. In some cases, for example, a defendant may decide that the sending of notice itself will be detrimental to its interests, sullying its reputation or perhaps leading some class members to be less willing to continue an ongoing relationship with the defendant. In other cases, a defendant may

want to avoid discovery or other litigation expenses entailed in notification which may be eliminated if the plaintiff's claim is rejected on the merits at an early stage of the proceeding. Indeed, in the instant case, it may well have been just such considerations (see fn. 3, *ante*) that led defendant to contest plaintiff's partial summary judgment motion on the merits, rather than seeking postponement of the court's consideration of the motion until after notice of the action had been sent to absent class members.

Having chosen to submit the issue to the trial court on the merits, defendant can hardly claim that it is "fundamentally unfair" in a due process sense to accord the trial court's decision binding effect. Even though a determination of the partial summary judgment issue in its favor may not have been legally binding on unnotified class members, defendant assumed that risk by not raising a timely objection to the trial court's resolution of the motion before class notification. As the *Home II* court noted: "If a defendant chooses to run the risk of collateral estoppel on an unfavorable judgment, it is defendant's right to due process that it hazards . . . ." (54 Cal.App.3d at p. 212.) In the instant case, defendant voluntarily hazarded the risk of an adverse decision on the merits of the partial summary judgment motion, and may not properly interpose a belated, after-the-fact objection to the trial court's entertainment of the motion.

Accordingly, we reject defendant's procedural attack on the trial court's partial summary judgment order.

3. ■ *The trial court did not violate defendant's due process rights in ordering it to bear the initial cost of notifying the plaintiff class of the pendency of the action.*

In addition to challenging the trial court's partial summary judgment order, defendant attacks the validity of the class certification order insofar as that order requires it initially to bear the cost of notifying absent members of the plaintiff class of the pendency of the action. Pointing out that in most civil actions such notice costs are initially borne by the plaintiff, defendant argues both that the trial court lacked authority to shift such notice costs to a defendant and that, even if the court possessed such authority, its order violates due process by requiring a defendant "to finance" a lawsuit against itself.[6]

---

[6]As far as the present record reveals, defendant never specifically raised its constitutional objections to the cost of notice order at the trial court level. (See fn. 5, *ante*.) Although

In support of its initial contention, defendant relies heavily on one passage from the United States Supreme Court decision in *Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140] (*Eisen IV*), in which the Supreme Court reversed a federal district court order imposing the cost of notice on a defendant in a federal class action. The *Eisen IV* court stated: "In the absence of any support under rule 23 [the federal rule governing class action procedure], petitioner's efforts to impose the cost of notice on respondents must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class. The exceptions cited by the district court related to situations where a fiduciary duty pre-existed between the plaintiff and defendant as in a shareholder derivative suit. Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." (Fn. omitted.) (417 U.S. at pp. 178-179 [40 L.Ed.2d at p. 749].)

Defendant erroneously relies on *Eisen IV.* As the above quotation from *Eisen IV* clearly indicates, the Supreme Court's conclusion that the federal district court had erred in ordering the defendant to bear notice costs in that case rested directly on the terms of rule 23 of the Federal Rules of Civil Procedure. In the absence of specific authorization for such cost-shifting in the provisions of the governing federal rule, the *Eisen IV* court indicated that the trial court should not properly have cast the very substantial cost of notice involved in that case upon the defendant.

Contrary to the present defendant's assertion, however, nothing in *Eisen IV* suggests that any absolute constitutional barrier obstructs such a preliminary cost-shifting order. Indeed, the Supreme Court's most recent class action decision, *Oppenheimer Fund, Inc.* v. *Sanders* (1978) 437 U.S. 340 [57 L.Ed.2d 253, 98 S.Ct. 2380] makes it clear that even under the federal rule a federal district court, in appropriate circumstances, is empowered to require a defendant to bear some of the expense entailed in identifying and notifying absent class members. Thus, the relevant federal authorities

this failure in itself could justify the denial of extraordinary relief (see, e.g., *Sayegh* v. *Superior Court* (1955) 44 Cal.2d 814, 815 [285 P.2d 267]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 110-112, pp. 3886-3888), on occasion our court has not held parties strictly to this requirement. (See, e.g., *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 465 [171 P.2d 8].) Since plaintiff did not raise this point before this court and because the important general issue presented by the case has already been fully briefed and argued, we believe the constitutional question should be resolved at this juncture. (See, e.g., *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170-171 [84 Cal.Rptr. 718, 465 P.2d 854].)

go no further than to hold that, under the present provisions of federal rule 23, a plaintiff in a federal class action is normally required to bear the "burden of financing his own suit."

In California, in contrast to the federal realm, the Legislature has specifically authorized trial courts in class actions to impose the cost of notice upon either the plaintiff or the defendant. Civil Code section 1781, subdivision (d), a provision of the Consumer Legal Remedies Act enacted in 1970 to facilitate consumer class actions, explicitly provides that "[i]f the action is permitted as a class action, the court may direct *either party* to notify each member of the class of the action." (Italics added.)

Although section 1781, subdivision (d) does not directly apply to the present case because insurance is technically neither a "good" nor a "service" within the meaning of the act (Civ. Code, § 1761, subds. (a), (b)), we expressly held in *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820, that the class action procedures prescribed by the Consumer Legal Remedies Act could and should appropriately be utilized by trial courts in all class actions.[7] Numerous decisions since *Vasquez* have confirmed the applicability of the act's procedures in class actions which do not strictly fall within the aegis of the act. (See, e.g., *Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699, 703, 707 [109 Cal.Rptr. 254]; *Carlson* v. *Superior Court* (1973) 33 Cal.App.3d 640, 649, fn. 1, 651 [109 Cal.Rptr. 240].) Moreover, in enumerating the various provisions of the Consumer Legal Remedies Act by which trial courts should be guided, we specifically identified in *Vasquez* section 1781, subdivision (d), and its authorization of the imposition of notice costs on either party in a class action. (4 Cal.3d at p. 820.) Thus, under *Vasquez,* California trial courts clearly possess general authority to impose notice costs on either party, plaintiff or defendant, in a class action.

---

[7]Our *Vasquez* decision stated in this regard: "If the class action is to prove a useful tool to the litigants and the court, pragmatic procedural devices will be required to simplify the potentially complex litigation while at the same time protecting the rights of all the parties. Although we have concluded that the provisions of the Consumer Legal Remedies Act do not apply retroactively to this case, no valid reason exists to prevent the trial court from utilizing many of the procedural provisions of the act in the interests of efficiency. . . ." (4 Cal.3d at p. 820.)

Although *Vasquez* also indicated that federal rule 23 might provide additional guidance to California courts, the decision clearly indicated that the California Consumer Legal Remedies Act should be the initial and principal guide. We declared: "The technique described in the [Consumer Legal Remedies Act] may not adequately encompass all the procedural problems facing a court in the trial of a class action. *In the event of a hiatus,* rule 23 of the Federal Rules of Civil Procedure prescribes procedural devices which a trial court may find useful." (Italics added.) (4 Cal.3d at p. 821.)

Defendant contends, however, that even if the trial court was authorized under state law to impose notice costs upon it, the order nonetheless fails under the federal due process clause. The gist of defendant's argument appears to be that insofar as section 1781, subdivision (d), and the *Vasquez* decision authorize a court to require a defendant "to finance" a lawsuit against itself, the statute and *Vasquez* deny a defendant "due process of law." Although defendant does not articulate its constitutional argument in any depth, and indeed does not even indicate whether the alleged constitutional violation flows from a denial of "substantive" or of "procedural" due process, we explain that the order at issue here is not a denial of due process in either sense.

To begin with, neither section 1781, subdivision (d), nor the trial court order at issue here is vulnerable to a substantive due process challenge. As our court has observed on many occasions in recent years, the adoption of efficient class action procedures unquestionably rationally relates to the vindication of a wide range of legitimate public purposes. (See, e.g., *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 714-715 & fn. 14 [63 Cal.Rptr. 724, 433 P.2d 732]; *Vasquez* v. *Superior Court, supra*; *Southern California Edison Co.* v. *Superior Court* (1972) 7 Cal.3d 832, 841-842 [103 Cal.Rptr. 709, 500 P.2d 621].) Thus, in *Vasquez* we emphasized: "Protection of unwary customers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society. . . . A class action by consumers produces several salutary byproducts, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims." (4 Cal.3d at p. 808.)

A class action procedure authorizing a trial court to impose notice costs upon a defendant in a particular case serves the same general public policies. In the absence of such a cost-shifting procedure, the class action mechanism might frequently be completely frustrated since the representative plaintiff, whose individual claim will ordinarily be relatively small, may often be unable to afford the initial cost of notifying all absent members of the pendency of the action. (See Note, *Managing the Large Class Action: Eisen v. Carlisle & Jacquelin* (1973) 87 Harv.L.Rev. 426, 441-442; Comment, *Cost Allocation in California Class Actions* (1976) 13 Cal. Western L.Rev. 65, 83.) Under such circumstances, a defendant who may have improperly inflicted a small financial loss upon a great number

of people could succeed in defeating a class action suit without regard to the strength of the plaintiff's claim. (Cf. *Southern California Edison Co.* v. *Superior Court, supra,* 7 Cal.3d 822, 841-842.) In light of the public interest in establishing a procedure that permits such actions to be decided on their merits, such a cost-shifting procedure is neither arbitrary nor irrational and thus does not abridge substantive due process guarantees.

Although defendant vigorously contends that it is unconscionable to require a defendant "to finance" a lawsuit against itself, we know of no principle of law that precludes the state from providing for a division or shifting of litigation costs, prior to judgment, to effectuate legitimate public policies.[8] Indeed, notwithstanding defendant's protestations, the instant order is by no means unusual in requiring a defendant, prior to judgment, to bear some litigation expenses which may aid the plaintiff's lawsuit.

The widely used civil discovery procedures, for example, very often require a defendant, prior to judgment, to expend significant funds to retrieve and identify information which will prove beneficial to a plaintiff's case. Although a defendant may, of course, seek a court order to compel the plaintiff to pay such costs (Code Civ. Proc., § 2019, subd. (b)(1)) any such shifting of discovery expenses lies within the sound discretion of the trial court (see *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 383-384 [15 Cal.Rptr. 90, 364 P.2d 266]) and in many cases defendants are required initially to bear substantial discovery costs, costs which might be characterized as helping "to finance" the plaintiff's lawsuit.[9]

Moreover, in a myriad of other contexts, the Legislature has enacted specific provisions which authorize a trial court, prior to judgment, to

[8]The general costs statutes (Code Civ. Proc., § 1021 et seq.) clearly demonstrate, of course, that once a judgment has been entered against the defendant, there is nothing improper or unconscionable in requiring a defendant "to finance" the lawsuit against itself.

[9]Indeed, class action notice costs are quite analogous to discovery costs, for much of the expense typically identified with the cost of notice relates to the identification of class members from defendants' records, and defendants have frequently been required to provide such identification under traditional discovery procedures. (See, e.g., *Budget Finance Plan* v. *Superior Court* (1973) 34 Cal.App.3d 794, 799 [110 Cal.Rptr. 302]; cf. *Oppenheimer Fund, Inc.* v. *Sanders, supra,* 437 U.S. 340 [57 L.Ed.2d 253, 98 S.Ct. 2380]. See generally Note, *Allocation of Identification Costs in Class Actions* (1978) 66 Cal.L.Rev. 105; Comment, *Allocation of Identification Costs in Class Actions* (1978) 91 Harv.L.Rev. 703.)

impose the initial cost of various litigation expenses upon either or both of the parties to the litigation. (See, e.g., Evid. Code, §§ 731, subd. (c) (compensation of court-appointed expert witness); 752, subd. (b) (compensation of court-appointed interpreter); 753, subd. (b) (compensation of court-appointed translator); 894 (compensation of court-appointed blood test expert); Wat. Code, §§ 2040-2048 (allocation of reference expenses; see *City of Los Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 296-297 & fn. 104 [123 Cal.Rptr. 1, 537 P.2d 1250]).) These numerous examples of well-established procedures authorizing a trial court to allocate prejudgment costs between the parties refute defendant's contention that the order at issue denies defendant substantive due process.

Defendant apparently contends, however, that even if the notice cost order does not violate substantive due process principles, the order nevertheless violates *procedural* due process. Although defendant fails to set forth its argument with any clarity, the thrust of the contention appears to be that the trial court order—imposing the initial cost of notice on defendant—constitutes at least an interim and, in view of plaintiff's limited resources, probably a permanent, "taking" of defendant's property, and that the authorization of such a "taking" prior to final judgment denies defendant procedural due process.

Although defendant cites no authority in support of its contention that a trial court order regulating parties' respective responsibilities for on-going litigation expenses constitutes a "taking" or "deprivation" of property, even assuming that such a taking is involved here we find no denial of procedural due process. Although defendant accurately observes that recent constitutional decisions hold that even interim deprivations or takings of property trigger procedural due process requirements (see, e.g., *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 551-552 [96 Cal.Rptr. 709, 488 P.2d 13]; *Fuentes* v. *Shevin* (1972) 407 U.S. 67, 84-86 [32 L.Ed.2d 556, 572-573, 92 S.Ct. 1983]), defendant errs in suggesting that any such taking is unconstitutional unless preceded by a final court judgment. On the contrary, the recent decisions have affirmed that a deprivation is clearly constitutional if, prior to the taking, the party facing deprivation obtains notice and a meaningful hearing as to the propriety of the deprivation. (See, e.g., *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 208-211 [124 Cal.Rptr. 14, 539 P.2d 774]; *Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458-459 [121 Cal.Rptr. 585, 535 P.2d 713].)

In the instant case, of course, before the trial court issued its order defendant received notice and a full hearing on the issue of who should bear the cost of notifying absent class members of the pendency of the suit. Because defendant has failed to include a transcript of the hearing in the instant record we cannot determine with specificity what issues were discussed by the parties and the court; defendant, however, does not contend that it was denied a complete opportunity to argue against plaintiff's request that defendant bear the initial cost of notice burden. Under these circumstances we must assume that the trial court considered the wide range of factors that other courts have identified as relevant to the cost allocation decision (see *Cartt* v. *Superior Court, supra,* 50 Cal.App.3d 960, 974, fn. 21; *Berland* v. *Mack* (S.D.N.Y. 1969) 48 F.R.D. 121, 131-132; *Lamb* v. *United Security Life Company* (S.D.Iowa 1972) 59 F.R.D. 25, 38-43),[10] and, in light of such factors, exercised its discretion in favor of requiring defendant to bear the cost of notice.[11]

Defendant appears to argue, however, that despite the fact that it was afforded full notice and a hearing on the cost of notice issue, procedural due process requisites were not satisfied because the court order shifted the initial cost of notice prior to the court's final determination of the merits of the action. As the numerous statutory procedures governing the imposition of discovery and expert witness costs illustrate, however, procedural due process is not offended by a court order which—after notice and hearing on the factors relevant to the interim cost allocation decision—imposes some of the on-going litigation costs on a defendant

---

[10]In *Berland* v. *Mack, supra,* for example, the court stated: "The decision as to how the cost of notice is to be allocated between the parties appears to be an appropriate area for exercise of [a trial court's] discretion, having in mind the objective of enabling the class action device to be used effectively to prosecute a meritorious claim (instead of being foreclosed as too expensive) and at the same time restrained from being converted into a vehicle for harassment by frivolous claimants. . . . [W]e believe that no rigid rule as to allocation of expense of notice is advisable and that the better course is to decide the issue in each case on the basis of the relevant factors, including the apparent merit or lack of merit in the claim, the defendant's desire to take advantage of the broader *res judicata* effect of a class action, the number of named plaintiffs and their financial responsibility, the value and percentage of their holdings as compared with those of the entire class, the ability of the plaintiffs to make the initial outlay required, and, of course, the cost of notice." (48 F.R.D. at pp. 131-132.)

[11]In this regard, we note that defendant has not contended that, given the facts of this particular case, the trial court abused its discretion in ordering defendant initially to bear the cost of notice. Defendant claims only that in light of due process guarantees, the trial court lacked any discretion whatsoever to shift notice costs to a defendant, regardless of the circumstances.

without a final determination on the merits of the case. Although, as the decisions cited above indicate, the trial court's preliminary view of the strength of plaintiff's claim may be a proper factor in the court's allocation of notice costs, a final judgment on the merits is not a due process prerequisite to an interim court order imposing litigation costs on a defendant. (Cf. *Oppenheimer Fund, Inc.* v. *Sanders, supra,* 437 U.S. 340 [57 L.Ed.2d 253, 98 S.Ct. 2380].)

Moreover, the trial court order in the present case is particularly invulnerable to a procedural due process challenge for, as we have seen, at the time the trial court issued the order the court had already rendered partial summary judgment for plaintiff on two of the principal legal issues raised in the case. Although additional factual questions remained to be litigated, the partial summary judgment order, rejecting defendant's interpretation of its insurance policy, realistically assured the plaintiff class at least a partial victory in its lawsuit. Under similar circumstances, the United States Supreme Court in *Mills* v. *Electric Auto-Lite* (1970) 396 U.S. 375, 389-390 [24 L.Ed.2d 593, 605, 90 S.Ct. 616], expressly recognized that plaintiffs who obtain a partial summary judgment are "entitled to an interim award of litigation expenses. . . ." Thus defendant completely fails to show that the trial court order imposing notice costs on defendant violated due process.

### 4. *Conclusion.*

As we have explained, we have concluded that neither of the two pretrial class action orders at issue in this case succumbs to defendant's constitutional attack. First, in failing to object to the trial court's consideration of plaintiff's summary judgment motion prior to class notification, defendant waived any valid constitutional objection it may have had to the trial court's consideration of the motion at that stage. Second, contrary to defendant's contention, the trial court order requiring defendant to bear the initial cost of notifying absent class members of the pendency of the action did not violate either substantive or procedural due process.

Accordingly, the alternative writ previously issued is discharged and defendant's request for a peremptory writ is denied. Plaintiff (real party in interest) shall recover its costs.

Bird, C. J., Mosk, J., and Newman, J., concurred.

**CLARK, J.**—I dissent.

The trial court's order requiring defendant to pay costs of notice to plaintiff constitutes a permanent deprivation of property without a final or even tentative adjudication of liability. As such the order constitutes a denial of due process. Omitting reference to the affidavit filed in support of the motion to compel payment of notice costs and mischaracterizing the order of the trial court, the majority ignore the fact that there is a final deprivation of property.

In her affidavit in support of the motion to compel defendant to pay costs of publication, plaintiff declared her salary as a clerk typist and that she did not have the financial resources to pay notice costs. There is no allegation as to whether plaintiff's counsel could advance costs. Ordering notice both by mail and publication in several newspapers, the court first provided that cost of notice is a recoverable cost to the prevailing party. The court continued: "The costs of mailing and publishing notice are to be split equally between the plaintiff and defendant for the first $20,000 of such cost, and the defendant alone shall bear all costs above $20,000. Further, the plaintiff is not required to pay any costs of notice until such time as judgment is rendered in this action, and then only if plaintiff is not the prevailing party."

The court's order compelling defendant to expend money (property) to notify the class results in a taking in the constitutional sense. The fact that the defendant theoretically may be able to recover part or even all the expended costs would not change its unlawful nature. (*North Georgia Finishing, Inc.* v. *Di-Chem., Inc.* (1975) 419 U.S. 601, 606 [42 L.Ed.2d 751, 757, 95 S.Ct. 719]; *Fuentes* v. *Shevin* (1972) 407 U.S. 67, 86 [32 L.Ed.2d 556, 573, 92 S.Ct. 1983]; *Brooks* v. *Small Claims Court* (1973) 8 Cal.3d 661, 666 [105 Cal.Rptr. 785, 504 P.2d 1249].)

Defendant's hope of recovering notice costs from the named plaintiff is truly speculative as a practical matter. The court's order is based on plaintiff's affidavit that she cannot afford to pay for notice, and there is no reasonable expectation that should defendant prevail it could recover notice costs from the named plaintiff. Moreover, the trial court's order precludes defendant recovering from the named plaintiff more than one-half of the first $20,000 of costs.

It is suggested that defendant, should it prevail, could recover notice costs from members of plaintiff class other than the named plaintiff. But to allow defendant to single out a solvent plaintiff who takes no active part in the litigation, requiring him to pay all of the notice costs—possibly exceeding $20,000—is monstrous. A prorata approach would also be manifestly unfair. It would be patently inequitable to permit defendant to recover against potential class members who received notice and chose to opt out of the litigation—frequently realizing that the game is not worth the candle. Defendant's recovery would be no less unfair as to those class members who chose not to incur the expense of consulting an attorney and who did not have the foresight to opt out. Indeed, the mind is boggled by the possibility that defendant would record its judgment for notice costs against the class and proceed to enforce it by execution or garnishment against each member's home or personal property, constantly increasing the costs of a class member who took no part in the litigation. Plaintiff may not be permitted to use without consent the resources or credit of unnamed class members to finance the action.

Defendant's inability to recover notice costs means that the trial court's order requiring their payment is a permanent deprivation of property without a final or even tentative adjudication of liability.

Fundamental principles of due process require notice and hearing in every case involving deprivation of property. (*Goss* v. *Lopez* (1975) 419 U.S. 565, 576 [42 L.Ed.2d 725, 735-736, 95 S.Ct. 729]; *Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 458 [121 Cal.Rptr. 585, 535 P.2d 713]; *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 151-152 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803].) Absent extraordinary circumstances, the requisite hearing must *precede* the deprivation of a significant property interest. (*Beaudreau* v. *Superior Court, supra,* 14 Cal.3d at p. 458; *Brooks* v. *Small Claims Court, supra,* 8 Cal.3d at pp. 667-668; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 547 [96 Cal.Rptr. 709, 488 P.2d 13]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 278 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

The nature and scope of the requisite hearing is determined by balancing the respective interests. (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 118, 91 S.Ct. 780]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 263 [25 L.Ed.2d 287, 296, 90 S.Ct. 1011].) However, the hearing must be significant (*Armstrong* v. *Manzo* (1965) 380 U.S. 545, 552 [14 L.Ed.2d 62, 66-67, 85 S.Ct. 1187]) and appropriate to the nature of the

case. (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652]; *Beaudreau* v. *Superior Court, supra,* 14 Cal.3d at p. 458.) These principles apply to the deprivation of all personal rights, not merely to prejudgment creditor remedies. (*Rios* v. *Cozens* (1972) 7 Cal.3d 792, 795 [103 Cal.Rptr. 299, 499 P.2d 979], vacated *sub nom. Dept. Motor Vehicles of California* v. *Rios* (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], opn. reiterated *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696]; see *Randone* v. *Appellate Department, supra,* 5 Cal.3d at p. 547.)

The trial court's order forces the defendant to finance plaintiff's lawsuit, despite there being neither historic nor statutory basis for doing so (Code Civ. Proc., §§ 1031, 1032; 4 Witkin, Cal. Procedure (2d ed. 1971) §§ 80, 84, pp. 3242, 3245),[1] and despite plaintiff's having no right to defendant's property beyond an unsubstantiated claim for damages. (See *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 154-155 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803].) Under these circumstances, the trial court's order constitutes a clear taking of defendant's property without due process. (*Beaudreau* v. *Superior Court, supra,* 14 Cal.3d 448, 464.)

Defendant has raised numerous defenses to the underlying action both by denials and by affirmative defense. The partial summary judgment attempted to dispose of only two affirmative defenses, giving no more than a hint as to the outcome of the action. In fact, defendant's motion to amend its answer and to set up three additional affirmative defenses was later granted. Contrary to the implications of the majority opinion, there has been no determination of probable liability.

Because defendant was ordered to advance costs for the lawsuit against it before adjudication of its liability, the trial court violated defendant's

---

[1]An attempt is made to analogize the cost-shifting order in the instant case to such orders in discovery matters. The analogy is not persuasive. First, Code of Civil Procedure sections 2019, subdivision (b)(1), and 2020, subdivision (d), specifically authorize the court to impose discovery costs on either party. No similar statutory authorization applies here. Second, in discovery—as is traditional in our system of jurisprudence—the ordinary rule is that each party or witness produces the evidence in his possession. Obviously, the cost of producing evidence may be substantial in some cases, and the statutory authority given to the courts to shift the expense of producing the evidence is to allow the courts in appropriate cases to place the cost on the moving party—the one seeking the evidence and thereby creating the necessity for the expense. Cost shifting in the instant case is to permit the moving party to escape the expenses traditionally placed on it—expenses it has required be met.

right to due process. Defendant is entitled to a writ of prohibition restraining respondent court from ordering it to notify the class or to pay the cost of notice.

The majority rely upon provision in the Consumers Legal Remedies Act that a court may direct "either party" to notify class members. (Civ. Code, § 1781, subd. (d).) However, the provision should not be read as conferring absolute discretion upon judges to order defendants to serve notice but only as conferring discretion to do so in proper cases. The proper cases are shown by the immediately preceding subparagraph. Section 1781, subdivision (c), subparagraph (3), provides that the trial judge upon motion may determine "there is no defense to the action." It is only after he can properly determine on motion that there is no defense to the action, i.e., strike the answer, that he may properly order a defendant to bear the cost of notice. In the instant case, there has not been a determination of no defense to the action; rather trial is still pending based upon defendant's denials and affirmative defenses.

It has been suggested the due process objections to requiring a defendant to pay plaintiff's costs pendente lite might be satisfied by pretrial hearing to determine the probable outcome of the action. It is argued that available public records in some cases furnish sufficient basis for such adjudication without lengthy testimony. (*Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 975 [124 Cal.Rptr. 376].) However, even in the unusual case where such documentation exists, such cursory prejudgment should be rejected. It is unfair to require a litigant to defend against unspecified claims from unidentified class members. Thus, class certification and notice are required before the trial court may adjudicate substantive issues.[2] Changing the battlefront from motions determining

---

[2]The propriety of adjudicating substantive issues prior to certification and notice was addressed in *Home Sav. & Loan Assn.* v. *Superior Court* (1974) 42 Cal.App.3d 1006 [117 Cal.Rptr. 485] (*Home I*). In *Home I* the court held that certification and notice must precede substantive determinations. (See *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 385, fn. 3 [134 Cal.Rptr. 393, 556 P.2d 755].) As the court there noted, the vice inherent in permitting this procedure is that it places a defendant in a "can't win" situation. (*Id.,* at pp. 1011-1012.)

Until the scope of named plaintiffs' representation has been determined, notice to prospective class members is given, and a reasonable opportunity afforded for class members to "opt out" of the action, members of the class—other than the named plaintiffs—are not bound by the substantive adjudication. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704-706 [63 Cal.Rptr. 724, 433 P.2d 732]; *Chance* v. *Superior Court* (1962) 58 Cal.2d 275, 288-289 [23 Cal.Rptr. 761, 373 P.2d 849]; *Weaver* v. *Pasadena Tournament of Roses* (1948) 32 Cal.2d 833, 842 [198 P.2d 514]; see *City of San Jose* v. *Superior Court*

piecemeal merits to motions compelling advance costs—often irrecover-able—does not alter the unfairness. The probable outcome hearing again pits defendant against phantom plaintiff.

Moreover, as the United States Supreme Court pointed out in rejecting a pretrial hearing to determine probable outcome in class actions, "a preliminary determination of the merits may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials. The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant." (*Eisen* v. *Carlisle & Jacquelin* (1973) 417 U.S. 156, 178 [40 L.Ed.2d 732, 749, 94 S.Ct. 2140].)

Requiring plaintiffs in class actions to pay notice costs does not place an unreasonable limitation upon meritorious causes of action. The traditional method of financing class litigation involving minor claims of many plaintiffs—like the method of financing plaintiff costs in personal injury litigation—is for counsel to advance the costs. If counsel does not have sufficient confidence in his cause to advance costs, he should not burden our courts with the questionable claims of clients who have not retained him.

While this case was pending, the United States Supreme Court unanimously held that a trial court abused its discretion in requiring a defendant to pay costs of notice to the class. The court recognized that in

(1974) 12 Cal.3d 447, 463 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; Civ. Code, § 1781, subd. (e)(2).)

Given this rule, a substantive decision prior to certification and notice places the class members in the very advantageous position of being able to reserve their decision to remain in the class or to "opt-out" until after they have had an opportunity to learn the outcome. Thus, the class members are granted the option of either joining the class action if the decision on the merits is favorable and thus of sharing in the recovery, or of opting out of the action and avoid being bound by any adverse rulings if the decision is not in their favor. By this procedure, the class members are guaranteed all benefit of victory without risk of defeat. The class cannot lose.

The defendant cannot truly win. Under such procedures, any victory the defendant achieves may be an empty one. Substantive determination binds only named plaintiffs. The remaining class members are free to renew actions against the defendant for an extended time. The defendant is therefore left to face an uncertain chain of lawsuits that cannot be defended, settled or adjudicated except piecemeal. The inherent unfairness to a litigant contravenes the fundamental purposes of class actions. (*Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, 385; *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 873 [97 Cal.Rptr. 849, 489 P.2d 1113].)

some situations the defendant could more efficiently perform some of the tasks incidental to notice and could be compelled to perform those tasks. However, it held that as to the payment of costs of notice the burden was on the plaintiff because it is the plaintiff not the defendant who chose to maintain the action as a class action. The court rejected the argument that defendant could be required to pay because it was wealthy. (*Oppenheimer Fund, Inc.* v. *Sanders* (1978) 437 U.S. 340 [57 L.Ed.2d 253, 98 S.Ct. 2380].)

The two justifications for requiring the defendant to pay the plaintiff's costs—the asserted predetermination of liability and the wealth of the parties—both failing, I would grant the relief sought.

Richardson, J., and Manuel, J., concurred.