64 Cal.Rptr.3d 623 (2007)
154 Cal.App.4th 435
Pauline FAIRBANKS et al., Petitioners,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
Farmers New World Life Insurance Co. et al., Real Parties in Interest.
No. B198538.
Court of Appeal of California, Second District, Division Three.
August 22, 2007.
As Modified September 5, 2007.
*624 Law Office of Robert S. Gerstein and Robert S. Gerstein; Marks Law Firm and Scott A. Marks; Sheller Law Firm and David L. Sheller, Pro Hac Vice Status; Girardi Keese and John A. Girardi, Los Angeles, for Petitioners.
No appearance for Respondent.
Fulbright & Jaworski, Richard R. Mainland, Peter H. Mason, Joshua D. Lichtman *625 and Eric A. Herzog, Los Angeles, for Real Parties in Interest.
CROSKEY, J.
The Consumer Legal Remedies Act (Civ.Code, §§ 1750 et seq. ["CLRA"]), enacted in 1970, is a pro-consumer statute intended to protect low-income consumers from deceptive or unfair business practices. It prohibits specific deceptive or unfair acts in the sale or lease of goods and services. In these proceedings, we consider whether insurance is a "good" or "service" within the meaning of the CLRA. This case presents a difficult issue of first impression; plausible arguments can be made on both sides of the issue. We ultimately conclude, however, that the more persuasive and better reasoned argument requires that we hold that insurance is neither a "good" nor "service" within the meaning of the CLRA.

FACTUAL AND PROCEDURAL BACKGROUND[1]
Farmers New World Life Insurance Company ("Farmers") is a provider of interest-sensitive universal life insurance policies.[2] Pauline Fairbanks purchased a Farmers Flexible Premium Universal Life policy. The Flexible Premium Universal Life policies sold by Farmers were represented to be permanent insurance. When she was sold such a policy, Fairbanks was informed that she could keep the policy in full force indefinitely by paying a stated premium amount. In reality, this premium amount was insufficient to keep the policy in force to maturity. Fairbanks alleged in her complaint that Farmers' policies were misrepresented and that Farmers engaged in deceptive and unfair practices in the design and marketing of the policies. She additionally alleged that these policies were systematically underfunded so that they would lapse before maturity, and that Farmers fraudulently failed to warn policyholders of this possibility. She contended Farmers' guidelines were deceptively designed because they did not advise the insureds of the consequences of not paying the higher premium necessary to keep the policy in force until maturity.
Fairbanks, on behalf of herself and others similarly situated, sued Farmers in November of 2003. Michael Cobbs, also a purchaser of a Flexible Premium Universal Life policy, was added as a second named plaintiff in an amended complaint. The operative complaint alleges six different causes of action, including the one at issue herea cause of action for unfair and deceptive practices under the CLRA. Farmers moved for a dismissal of the CLRA cause of action, arguing that it had no merit because insurance is neither a "good" nor a "service" within the meaning of the CLRA. The superior court granted the no-merit motion. Fairbanks and Cobbs ("Petitioners") now petition this court for a writ of mandate.

ISSUE PRESENTED
The sole issue presented by this petition is whether insurance is subject to the protections of the CLRA. Considering the plain language of the statute, legislative history, and policy issues, we conclude that it is not.

DISCUSSION

1. Standard of Review

We review this motion de novo. "Although a CLRA cause of action cannot be summarily disposed of by means of a motion for summary adjudication or summary judgment [citation], it can be dismissed *626 before trial on a motion for determination that it is without merit (i.e., a nomerit determination) [citation]. In practice, courts nevertheless have applied the standards applicable to motions for summary judgment and summary adjudication in deciding motions for no-merit determinations." (Smith v. Wells Fargo Bank, N.A. (2005) 135 Cal.App.4th 1463, 1474-1475, 38 Cal.Rptr.3d 653). Thus, on appeal, we review the record de novo to determine whether there are any genuine issues of material fact or whether the moving party was entitled to judgment as a matter of law. (Id. at p. 1474, 38 Cal. Rptr.3d 653.)

2. Relevant Statutes

The CLRA is a statute that regulates any "transaction intended to result or which results in the sale or lease of goods or services to any consumer." (Civ.Code, § 1770 subd. (a).) It prohibits 23 "proscribed practices," a few of which could conceivably apply to insurance. For instance, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have" is prohibited under this act. (Civ.Code, § 1770 subd. (a)(5).) Additionally, "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" is prohibited. (Civ.Code, § 1770, subd. (a)(7).) "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not," (Civ.Code, § 1770 subd. (a)(16)), and "[inserting an unconscionable provision in the contract," (Civ.Code, § 1770, subd. (a)(19)), are additional acts proscribed by the CLRA that could arguably relate to insurance. The CLRA allows for restitutionary and injunctive relief as well as compensatory and punitive damages and for attorney's fees. (Civ.Code, § 1780, subds.(a)(1)-(a)(5).)
Portions of the Insurance Code also regulate unfair and deceptive practices in the business of insurance. The Unfair Insurance Practices Act ("UIPA") prohibits the making, issuance or circulation of "any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received...." (Ins.Code, § 790.03, subd. (a)). In addition, the UIPA proscribes the knowing misrepresentation of "pertinent facts or insurance policy provisions relating to any coverages at issue," (Ins.Code, § 790.03 subd. (h)(1)), and any attempts "to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." (Ins.Code, § 790.03, subd. (h)(7)). The UIPA allows for the Insurance Commissioner to enjoin unfair or deceptive acts or practices (Ins. Code, § 790.05) and to impose a civil penalty for each act or practice. (Ins.Code, § 790.035). We here consider whether the generally-applicable provisions of the CLRA override the insurance-specific provisions of the UIPA, and provide for a private right of action where the UIPA provides only for administrative enforcement.

3. The Plain Language of the CLRA Does Not Include Insurance as a "Good" or "Service"

The plain language of the CLRA indicates that insurance is not a "good." "Goods" are defined as tangible chattels bought or leased for personal, family or household use. (Civ.Code, § 1761, subd. (a).) Insurance is not a tangible item. Thus it cannot be a "good." It follows that the pertinent issue here is whether insurance can be considered a "service" under the CLRA.
*627 The CLRA defines "Services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (Civ.Code, § 1761, subd. (b)). Insurance, in contrast, is defined by the Insurance Code as "a contract, whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins.Code, § 22). Obviously, insurance contracts are not work or labor. Nor can these indemnification agreements easily be described as personal services or services "furnished in connection with the sale or repair of goods." An insurance contract is not something akin to a haircut, a plumbing repair, or a two-year warranty on a microwave ovenit is simply an agreement to pay if and when an identifiable event occurs. In an analogous context, one court has held that issuance of a credit card is not a "service" under the CLRA. (Berry v. American Express Publishing, Inc. (2007) 147 Cal.App.4th 224, 229-230, 54 Cal.Rptr.3d 91). The Berry court reasoned that the extension of credit is not a "service," especially when it is an extension of credit unconnected to a specific sale or lease transaction. A similar analysis applies to insurance, which is an essentially financial transaction, completely unrelated to the sale or lease of any identifiable consumer good or service. Thus, insurance does not appear to be a service under within the plain meaning of the language of the CLRA.[3]

4. Case Law Strongly Suggests that Insurance is Not a Service

In Civil Service Employees Ins. Co. v. Superior Court (1978) 22 Cal.3d 362, 149 Cal.Rptr. 360, 584 P.2d 497, the California Supreme Court considered a class action against an insurer. The court held that a trial court has the authority to order a defendant to bear the costs of notifying absent class members in a class action suit.[4] The court concluded that the CLRA class action procedures should be utilized in all class actions. However, in dicta, the court commented that insurance is neither a good nor a service under the CLRA. The court stated that "Although [Civil Code] section 1781, subdivision (d) does not directly *628 apply to the present case because insurance is technically neither a `good' nor a `service' within the meaning of the [CLRA], we expressly held ... that the class action procedures prescribed by the Consumer Legal Remedies Act could and should appropriately be utilized by trial courts in all class actions." (Id., at p. 376, 149 Cal.Rptr. 360, 584 P.2d 497). Though this statement is not controlling, it is a persuasive indicator of how our Supreme Court would decide the issue. Indeed, some federal courts have applied this dictum to hold that California courts would not apply the CLRA to claims involving the sale or administration of insurance policies. (See, e.g., Estate of Migliaccio v. Midland Nat'l Life Ins., (C.D.Cal.2006) 436 F.Supp.2d 1095, 1108).
Thus, the issue of whether insurance is a "service" within the meaning of the CLRA is one of first impression.[5] Although the statutory language and existing case law suggest that insurance is not a "service" under the CLRA, the issue cannot be confidently resolved without examining that statute's legislative history.

5. The Legislature Did Not Intend the CLRA to Apply to Insurance

a. "Insurance" was Intentionally Omitted from the Definition of "Services"

In determining whether the CLRA applied to credit cards, the Berry court found significant the exclusion of the words "money" and "credit" from the definition of "consumer" in the CLRA. While earlier drafts of the CLRA had "... defined `Consumer' as `an individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family or household purposes,'" the current definition had taken the words "money" and "credit" out. Thus, the court decided, the act was not likely to have been intended to apply to credit cards. (Berry v. American Express, supra, 147 Cal. App.4th at p. 230, 54 Cal.Rptr.3d 91 [citing Assem. Bill No. 292 (1970 Reg. Sess.) Jan. 21, 1970]). Similarly, as we discuss below, although "insurance" was indisputably a part of the model rule on which the CLRA was based, insurance was not included in the final draft of the act.
The legislative history of the CLRA indicates that it was adapted in large part from provisions contained in the National Consumer Act ("NCA"), a model rule proposed by the National Consumer Law Center at Boston College. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 292, (Reg.Sess.1970), Apr. 20, 1970, p. 1.) The NCA's definition of "services" specifically *629 includes insurance.[6] (NCA, § 1.301, subd. (37)(c).) Yet, when the California Legislature adapted the NCA to enact the CLRA, it omitted insurance from the definition of "services." The obvious conclusion is that the Legislature intentionally omitted insurance because it did not intend for the CLRA to apply to insurance. (Berry v. American Express, supra, 147 Cal. App.4th at p. 230, 54 Cal.Rptr.3d 91 [stating that "courts must not interpret a statute to include terms the Legislature deleted from earlier drafts"].)
In contrast, petitioners contend that the Legislature simply omitted insurance from the definition of "services" as the express designation of insurance as a service was unnecessary. Petitioners rely on a comment to the NCA, which states that "[insurance is clearly a service and should be under the same kind of regulation as any other service." (National Consumer Act, § 1.301, comment to subd. (37)(c).) Petitioners argue that, based on this comment, the California Legislature did not feel the need to reference insurance explicitly, and simply assumed that insurance is undoubtedly a service. We disagree. When the Legislature left certain phrases and words from the NCA out of the CLRA, we can only conclude that it was an intentional omission; there is nothing in the legislative history to suggest that the omission was due to a perceived redundancy. The NCA was broad enough to encompass businesses under its umbrella of protection, and the purposes of the NCA expressly include the regulation of consumer credit practices as well as insurance practices. The CLRA, in contrast, was meant only to protect consumers against unfair and deceptive practices in the sale of goods or services. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 292, (Reg. Sess.1970) Apr. 20, 1970, p. 1.) Thus, while the NCA includes insurance explicitly as a part of the definition of services and even provides an entire section regulating insurance, the CLRA does neither. Given the history before us, we must conclude that this is so because the CLRA has an intentionally narrower scope.

b. The Unfair Insurance Practices Act was Already in Existence at the Time of the CLRA's Enactment

The legislative history indicates that one of the prime concerns of the Legislature at time of the CLRA's enactment was that, at that time, the only remedy available to low-income consumers harmed by unfair business practices was a costly and often difficult-to-prove action for fraud. (Assem. Com. on Judiciary, Analysis Assem. Bill No. 292, (Reg.Sess.1970) Apr. 20, 1970, p. 1.). The CLRA was intended to provide a simpler remedy where there was none, particularly in cases where there was an unchecked history of repression by merchants in lower-income areas.
In contrast, at the time of the CLRA's enactment in 1970, insurance was already highly regulated. The UIPA already prohibited unfair and deceptive practices in the business of insurance, and provided for the Insurance Commissioner to enjoin such practices and impose civil penalties.[7] *630 Thus, when the CLRA was enacted, California already had in place measures to prohibit unfair practices in the business of insurance and to sanction the wrongdoers. This supports our conclusion that the Legislature did not have insurance in mind when it enacted the CLRA, and thus did not feel the need to include insurance as a "service" under the definition of goods and services protected under the CLRA.
According to the drafters' comment to the NCA, the NCA includes "insurance" in the definition of "services," because the NCA otherwise adopted the definition of "services" from the Uniform Consumer Credit Code ("UCCC"), and the UCCC gave "deferential treatment" to insurance.[8] Petitioners argue that the California Legislature must have excluded "insurance" from the CLRA, when adapting it from the NCA, because California has not adopted the UCCC. But if the NCA specifically included all types of insurance in its definition of services in order to indicate that insurance, which was given special treatment under the UCCC, was subject to the NCA, this actually serves as support for our conclusion. When the California Legislature enacted the CLRA, it could have specifically included insurance in the definition of services to similarly indicate that, regardless of the specific regulation of insurance by the UIPA, insurance would also be regulated under the CLRA. The fact that the Legislature, knowing that insurance was already regulated under the UIPA, omitted insurance from the definition of "services," shows that the omission was an intentional expression of legislative intent not to interfere with the regulatory scheme already established by the, Insurance Code.

6. Policy Considerations Support This Result

Policy considerations confirm our conclusion. In a practical sense, allowing for a CLRA remedy for insurance fraud would wreak havoc on the established code and decades of case history. Although, at one time, private actions were considered permissible under Insurance Code section 790.03, subdivision (h) (Royal Globe Ins. Co. v. Superior Court (1979) 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329), the California Supreme Court held in 1988 that the enforcement of section 790.03(h) was limited to administrative sanctions by the Insurance Commissioner, and that the Legislature had never intended, by its enactment of the UIPA, to create a private right of action. (Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 303-304, 250 Cal.Rptr. 116, 758 P.2d 58.) The majority in Moradi-Shalal adopted the Royal Globe dissent's argument that had the Legislature intended for the UIPA to grant third parties a private cause of action, then it would have said so in "clear, understandable, unmistakable terms, as it has done in numerous other statutes." (Id. at p. 295, 153 Cal.Rptr. 842, 592 P.2d 329).
It is clear that, if insurance were considered a "service" under the CLRA, many of the unfair and deceptive practices prohibited by the UIPA would also constitute "proscribed practices" under the CLRA. *631 For example, any violation of the UIPA prohibition against misrepresenting the pertinent facts or policy provisions relating to coverage (Ins.Code, § 790.03, subd. (a)) would also be a violation of the CLRA's prohibitions on representations regarding the quality of services provided (Civ.Code, § 1770, subds.(a)(5) & (a)(16)). Thus, allowing a private right of action under the CLRA would, in effect, undermine the holding in Moradi-Shalal and allow a private right of action for UIPA violations. This private right of action would be based not on any express grant of the right in clear, understandable, unmistakable terms, but on a conclusion that, although the CLRA was silent on the matter of insurance, it was intended to create a private right of action for insurance practices already regulated elsewhere. Indeed, interpreting the CLRA to apply to insurance would, in effect, swallow the UIPA whole by allowing a private right of action where the courts have explicitly held that a private right of action under that statute was never intended.[9]
Fairbanks argues that the holding in Manufacturers Life Ins. Co. v. Superior Court (1995) 10 Cal.4th 257, 41 Cal.Rptr.2d 220, 895 P.2d 56 supports the application of the CLRA to insurance. The holding in Manufacturers Life, however, is distinguishable from this case. In Manufacturers Life, the Supreme Court allowed a class action suit under California's unfair competition statute (Bus. & Prof.Code, § 17200, et seq.), based on an alleged violation of the Cartwright Act, to proceed over a demurrer based on Moradi-Shalal. The court noted that the Cartwright Act and the unfair competition statute had been in existence before the UIPA was enacted. (Id, at p. 274, 41 Cal.Rptr.2d 220, 895 P.2d 56). The court stated that the "UIPA, like all statutes, is to be applied according to its terms. Its language neither creates new private rights nor destroys old ones." (Id, at p. 279, 41 Cal. Rptr.2d 220, 895 P.2d 56). In contrast, since the UIPA predates the CLRA, it cannot be said that we are here reading the UIPA to silently destroy a pre-existing cause of action under the CLRA.[10] Instead, we simply hold that the CLRA did not sub silentio destroy the pre-existing regulatory scheme created by the UIPA.

*632 DISPOSITION

The petition for writ of mandate is denied. Farmers shall recover its costs in these proceedings.
WE CONCUR: KLEIN, P.J., and KITCHING, J.
NOTES
[1] The facts that we recite are taken from the allegations of the complaint filed by the petitioners, Pauline Fairbanks. For purposes of this opinion only, we assume such allegations to be true.
[2] Interest-sensitive life policies are policies whose premiums and value depend on the interest and risk rates set for the policies by the insurer over time.
[3] Petitioners rely on case law from other states concluding that insurance falls within consumer protection laws of those states. But the laws at issue in those cases have broader application than the language of the CLRA limiting coverage to goods and services. (See, e.g., McCrann v. Klaneckey (Tex. App.1984) 667 S.W.2d 924 [interpreting the Deceptive Trade Practices Act (V.T.C.A., Bus. & C. § 17.46, which regulates "false, misleading or deceptive acts or practices in the conduct of any trade or commerce ..." (emphasis added) ]; Stevens v. Motorists Mutual Ins. Co. (Ky.1988) 759 S.W.2d 819 [interpreting KRS § 367.170, which declares "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful" (emphasis added) ]; Fox v. Industrial Cas. Ins. Co. (1981) 98 Ill.App.3d 543, 54 Ill.Dec. 89, 424 N.E.2d 839, 842 ["The Act [Ill.Rev.Stat.1979, ch. 1211/2, par. 261(e)] defines merchandise as including "any objects, wares, goods, commodities, intangibles ..." (emphasis added) ]; Doyle v. St. Paul Fire Marine his. Co., Inc. (D.Conn. 1984) 583 F.Supp. 554, 556 ["[The Connecticut Unfair Trade Practices Act] broadly defines `trade or commerce' and expressly covers the distribution of services and property whether tangible or intangible. [Conn. Gen.Stat. §] 42-110a." (emphasis added) ]. In any event, out-of-state authority is not binding on this court.
[4] The defendant was seeking a writ of mandate to compel the trial court to vacate two pretrial orders in favor of the plaintiff class under two theories: one, that the defendant's constitutional right to due process was being violated, and the second, that the trial court lacked the authority to order the defendant to bear the initial burden of notifying absent class members of the pendency of the suit. (Civil Service Employees Ins. Co. v. Superior Court, supra, 22 Cal.3d at p. 376, 149 Cal. Rptr. 360. 584 P.2d 497.)
[5] Other cases in California involved CLRA actions based on financial products similar to insurance, but did not address whether these products are "goods" or "services." For example, a consumer who has obtained settlement from the defendant can still represent a class of injured plaintiffs in a class action suit for violations of the CLRA in connection with an IRA account (Kagan v. Gibraltar Sav. & Loan Assn. (1984) 35 Cal.3d 582, 587, 200 Cal.Rptr. 38, 676 P.2d 1060). The court held that prospective defendants cannot "pick off" class representatives by settling with individual class representatives. It did not address the merits of the plaintiff's actions; only the ability of the consumer to allege a class action under the CLRA. Similarly, in Massachusetts Mutual Life Ins. Co. v. Superior Court (2002) 97 Cal.App.4th 1282, 1292, 119 Cal.Rptr.2d 190, neither of the parties raised the issue of whether insurance is a "good" or a "service" under the CLRA, and so the court did not address it. It addressed instead, whether the trial court had erred in finding that the requirements for class certification had been met. (Id., at p. 1295, 119 Cal.Rptr.2d 190).
[6] The NCA's definition of "services" in its entirety, reads: "`Services' includes [¶] (a) work, labor, and other personal services, [¶] (b) privileges with respect to transportation, hotel and restaurant accommodations, education, entertainment, recreation, physical culture, hospital accommodations, funerals, cemet[e]ry accommodations, and the like, and [¶] (c) insurance." (NCA, § 1.301, subd. (37).)
[7] The UIPA was enacted in 1959. (Stats. 1959, ch. 1737, § 1.) The Insurance Commissioner was further empowered to promulgate appropriate regulations enforcing its provisions. (See Ins.Code, § 790.10.)
[8] While this is true, it is somewhat misleading. The UCCC included in its definition of services "insurance provided by a person other than the insurer." (UCCC, § 2-105, subd. (3).) The significance to our analysis is not that the NCA included "insurance" to distinguish the NCA from the UCCC, but that both the UCCC and the NCA felt the need to specifically identify insurance in their respective definitions of services, rather than simply assuming that their definitions otherwise encompassed insurance.
[9] See, e.g., Moradi-Shalal v. Fireman's Fund Ins. Companies, supra, 46 Cal.3d at pp. 304-305, 250 Cal.Rptr. 116, 758 P.2d 58 (no private right of action under Insurance Code § 790.03 or § 790.09); Zephyr Park v. Superior Court (1989) 213 Cal.App.3d 833, 837, 262 Cal.Rptr. 106 (no private right of action under Insurance Code § 790.03); Maler v. Superior Court (1990) 220 Cal.App.3d 1592, 1597-1598, 270 Cal.Rptr. 222 (concurring with holding in Zephyr Park ); Industrial Indemnity Co. v. Superior Court (1989) 209 Cal.App.3d 1093, 1097, 257 Cal.Rptr. 655 (no private right of action under Insurance Code, section 790.03(h)); Textron Financial Corp. v. National Union Fire Ins. Co. (2004) 118 Cal.App.4th 1061, 1070-1071, 13 Cal.Rptr.3d 586 (Insurance Code, sections 790 et seq. do not create a private right of action, and one cannot plead around this limitation); Smith v. State Farm Mut. Auto. Ins. Co. (1992) 5 Cal.App.4th 1104, 1116, 7 Cal.Rptr.2d 131 (Moradi-Shalal implicitly abolished all private causes of action under Ins.Code § 790.03).
[10] Furthermore, the plaintiffs in Manufacturers Life were seeking only injunctive and restitutionary relief under the unfair competition statute. Allowing for a right of action under the CLRA would allow for insureds to seek punitive and compensatory damages that the UIPA does not allow. In cases where, for all practical purposes, the suit appears to be for compensatory and punitive damages (as it seems here), it is likely that any claim for injunctive relief is simply an attempt at an impermissible "end-run" on Moradi-Shalal to recover damages not otherwise available under the UIPA. (State Farm Fire and Cas. Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1108-1109, 53 Cal.Rptr.2d 229).